Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 10 2013, 5:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOANN M. PRICE**
Merrillville, Indiana

ATTORNEYS FOR APPELLEES:

**ROBERT J. HENKE**
Office of the Attorney General
Indianapolis, Indiana

**ALEJANDRO ROSILLO**
Indiana Department of Child Services
Gary, Indiana

**DONALD W. WRUCK**
Wruck Paupore PC
Dyer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION OF )
THE PARENT-CHILD RELATIONSHIP OF )
E.T., D.T., L.T., and Y.T., Minor Children: )
)
M.T., )
)
    Appellant-Respondent, )
)
        vs. ) No. 45A03-1302-JT-49
)
INDIANA DEPARTMENT OF CHILD SERVICES and LAKE )
COUNTY COURT APPOINTED SPECIAL ADVOCATE, )
)
    Appellees-Petitioners. )

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Mary Beth Bonaventura, Judge
Cause Nos. 45D06-1207-JT-130, 45D06-1207-JT-131,
45D06-1207-JT-132 and 45D06-1207-JT-133

**October 10, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

M.T. ("Mother") appeals the juvenile court's termination of her parental rights over her minor children E.T.,[1] D.T., L.T., and Y.T. Mother raises the following issues for our review:

> 1. Whether the juvenile court's conclusion that continuation of the parent-child relationships poses a threat to the children's well-being is clearly erroneous;
>
> 2. Whether the juvenile court's conclusion that termination of Mother's parental rights over the children is in the children's best interests is clearly erroneous; and
>
> 3. Whether the juvenile court's conclusion that the Indiana Department of Child Services ("the DCS") has a satisfactory plan for the care and treatment of the children is clearly erroneous.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In 2010, Mother had three children: E.T., born January 13, 2005; D.T., born September, 19, 2008; and L.T., born January 24, 2010, ("the Children"). On July 17, 2010, the DCS received a report that Mother had negligently left her five-year-old child, E.T., with a mentally challenged neighbor ("the Neighbor") and that Mother and her mother ("Grandmother") would sometimes drop Mother's children off with the Neighbor for days at a time. When the DCS arrived, E.T. was in the Neighbor's home, was not wearing underpants, and reported that a man named John had sexually molested her.

Upon investigation, the DCS discovered that the Neighbor was mentally ill and unable to provide adequate care for the Children. Still, the Neighbor reported that E.T.

---

[1] The petition alleging this child to be a child in need of services lists the initials as E.B., but the order terminating parental rights lists the child's initials as E.T. We use the initials used in the termination order.

spent every night with her and that John often visited the Neighbor's home. When Family Case Manager Rachel Wolf subsequently visited Mother's home, she found John, the alleged perpetrator, and another man there with Grandmother, who was caring for D.T. and L.T. Grandmother could not name the children, L.T.'s diaper was heavily soiled, there were no diapers or formula in the home, and D.T. and L.T. appeared to be unbathed. When Mother and Grandmother were interviewed later, they stated that they sent E.T. to the Neighbor to make sure the home would not be robbed at night. The DCS removed the three children from Mother the same day alleging neglect.

On July 19, the DCS filed petitions alleging the Children to be Children in Need of Services ("CHINS"). The juvenile court held an initial hearing on July 20, appointed counsel to represent Mother, and continued the hearing. The court also found probable cause to believe the Children were CHINS, ordered Mother to participate in services, and ordered the DCS to investigate placement of the Children with a relative. On August 20, the juvenile court reconvened the initial hearing. Mother admitted the allegations in the CHINS petitions. The juvenile court then held a dispositional hearing, maintained the Children's placement in foster care, and again ordered Mother to participate in services.

On June 28, 2011, Mother gave birth to Y.T. Two days later, the DCS investigated a report that Mother's cognitive impairment prevented her from providing for the infant's basic needs and that Mother was not progressing in the services provided in the CHINS case for the older three children. The DCS removed Y.T. and, on July 5, filed a CHINS petition for that child. The juvenile court held an initial hearing the same day, appointed Mother the same counsel as in the existing CHINS proceedings, continued

Y.T. in foster care, and continued the initial hearing. On September 11, Mother admitted the material allegations in Y.T.'s CHINS petition. The juvenile court consolidated Y.T.'s dispositional case plan with the older three children's case plan, maintained all children in foster care, and ordered Mother to continue to participate in services and to find housing. At that point, the permanency plan for the Children, including Y.T., was reunification.[2]

On December 9, the juvenile court held a review hearing and changed the Children's permanency plan to termination of parental rights with adoption. However, the court ordered Mother to continue with services. The juvenile court conducted additional review hearings on March 14 and June 20, 2012. The permanency plan for the Children remained termination of parental rights and adoption following these hearings.

On July 9, the juvenile court authorized the DCS to file a petition to terminate the parental rights as to each child. On December 12, the juvenile court held an evidentiary hearing on the termination petitions, and Mother appeared with counsel. On December 16, the juvenile court issued its order granting the petitions to terminate Mother's parental rights as to the Children ("Termination Order").[3] The Termination Order provides, in relevant part:

> The reasonable probability that the conditions resulting in the removal of the child[ren] from the parents' [sic] home will not be remedied in that: The children were made wards of the Department of Child Services in July 2010 when Mother left [E.T.], 5 years of age with a neighbor who was mentally incapable of caring for the children [sic]. The neighbor had extreme disabilities and was unable to care for herself. The child was

---

[2] All future references to "the Children" include Y.T. unless otherwise stated.

[3] The Children's fathers' parental rights have also been terminated, but they do not participate in this appeal.

4

found with no underpants and the child indicated that she was sexually molested. The molestation was substantiated and another neighbor, unknown child molester was said molester. Mother would leave the child with the neighbor for days at a time to make sure no one broke into the home. Again, the child was five years old. Mother's home was investigated and the one[-]year[-]old was found with a soiled diaper and no formula was in the home for the five[-]month[-]old. Mother and children were living with the grandmother and mother was not there at the time of the investigation. The perpetrator was inside grandmother's home. Grandmother was low functioning and Grandmother was unable to even tell the case manager the names of the children. Grandmother was unable to care for the children. Mother was interviewed later that day and it was determined that the children needed to be removed due to the inappropriate caregiver, the sexual abuse of the five[-]year[-]old, and the overall lack of care for the children. Mother did not seem to understand or comprehend what was going on. Mother lacked the ability to comprehend the needs of the children.

Services were offered to all the parents pursuant to a case plan which included psychological evaluation, drug and alcohol evaluation, random drug screens, parenting assessment, parenting classes, home[-]based case management services and supervised visitations. Father's [sic] were offered Father's Initiative to establish paternity.

Mother completed the psychological evaluation and mother was diagnosed with a mild cognitive disability. Mother was also in need of a legal guardian for herself due to her disability. Mother was unable to properly care for herself much less her children. Mother did not have the mental capacity to understand the needs of the children. The evaluation revealed that mother was also in need of residing in a group home for assistance and supervision to support her own independent living needs. Mother would be unable to independently parent these children without putting the children at risk.

All the children have developmental and special needs and need specialized care. The caregiver needs to have the ability to make day[-]to[-]day decisions for the children.

Mother was sporadic with her visitations with the children. Mother would have a lot of no-shows and cancellations. Mother would not make herself available for home[-]based case management services. Mother would rarely submit to the random drug screens. The services were closed due to the lack of participation and mother not making herself available. Mother did not have a stable residence and would not keep the case

manager informed of her whereabouts. Mother had a very limited understanding of what needed to be done. Mother did not even know how to protect herself from harm. Mother met a man at the visitation site that ended up abusing her so bad that she needed to be hospitalized. Mother could not make proper decisions for herself.

[Y.T.] was born in June 2011 and custody was taken of her due to mother not having a secure residence. Mother was bouncing back and forth between family and friends. Mother was not progressing in her case plan. Mother did not have the skills to be an effective parent.

Mother was providing [sic] individual parenting classes in order to teach day-to-day life skills to mother. Mother was unable to comprehend and did not progress in her parenting skills.

Mother eventually secured a residence with the grandmother. Both mother and grandmother are low functioning and the children would not be safe in their care. Mother was offered services in order to teach mother to provide a nurturing environment for the child[ren]. Mother would have numerous people in and out of the home. Mother always needed help in her day[-]to[-]day activities. DCS attempted to try to find a relative caregiver or guardian for mother that would help mother in the care of the children, but that attempt fell through. Mother did not have the ability to maintain the children in her care independently.

Although mother has somewhat participated in the services offered, mother has not completed any of the services. Mother is unable to understand the information provided to her due to mother's disability.

* * *

Mother had years of services and mother still is unable to parent her children independently. Mother had another child that had to be removed due to mother's incapabilities and is continuing with services through that matter. The needs of the children have to be met and mother is unable to meet the basic needs of her children.

None of the parents are providing any emotional or financial support for the child[ren]. None of the parents have completed any case plan for reunification. It is unlikely that any of the parents will ever be in a position to properly parent these children. The children are placed together in the foster home and are bonded and thriving. The children have special needs and all their needs are being met. The children have been in placement

since July 2010 [except for Y.T., who was placed in foster care after her birth in June 2011,] and have not been returned to parental care or custody.

There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child in that: for the reasons state above. Additionally, the children deserve a loving, caring, safe, and stable home.

It is in the best interest of the child[ren] and their health, welfare and future that the parent-child relationship between the child[ren] and their parents be forever and fully and absolutely terminated.

The Lake County Division of Family and Children has a satisfactory plan for the care and treatment of the child[ren] which is Adoption by the foster parent . . . .

Appellant's App. at ii-iv.[4] Mother now appeals.

## DISCUSSION AND DECISION

### Standard of Review

We begin our review by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." Bailey v. Tippecanoe Div. of Family & Children (In re M.B.), 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), trans. denied. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. Schultz v. Porter Cnty. Office of Family & Children (In re K.S.), 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. Id. Although the right to raise one's own child should not be terminated

---

[4] Mother did not comply with Indiana Appellate Rule 51(C) by consecutively numbering all of the pages of her appendix. Indeed, the first document in the appendix contains no appendix page numbers at all. We remind Mother to comply with this requirement in the future. We also remind Mother to include a copy of the Chronological Case Summary in the appendix in future appeals in compliance with Appellate Rule 50(A)(2)(a).

solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. Id. at 836.

Before an involuntary termination of parental rights can occur in Indiana, the DCS is required to allege and prove, among other things:

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

* * *

(C) [and] that termination is in the best interests of the child . . . .

Ind. Code § 31-35-2-4(b)(2).[5] That statute provides that the DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights. The DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.), 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. Peterson v. Marion Cnty. Office of Family & Children (In re D.D.), 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), trans. denied. Instead, we consider only the evidence and reasonable inferences that are most favorable to the

---

[5] Indiana Code Section 31-35-2-4(b)(2) also allows the DCS to allege that "[t]he child has, on two (2) separate occasions, been adjudicated a child in need of services." But that additional, alternative provision is not relevant here.

8

judgment.  Id.  Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous.  Judy S. v. Noble Cnty. Office of Family & Children (In re L.S.), 717 N.E.2d 204, 208 (Ind. Ct. App. 1999). trans. denied.

Here, in terminating Mother's parental rights, the juvenile court entered specific findings of fact and conclusions thereon.  When a juvenile court's judgment contains special findings and conclusions, we apply a two-tiered standard of review.  Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005).  First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment.  Id.  "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference."  Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996).  If the evidence and inferences support the trial court's decision, we must affirm.  In re L.S., 717 N.E.2d at 208.

Mother contends that the evidence does not support the juvenile court's findings. She also challenges the court's legal conclusions that, on these facts, termination of her parental rights is justified because a continuation of the parent-child relationships poses a threat to the children's well-being,[6] that the termination of her parental rights is in the children's best interests, and that the DCS has a satisfactory plan for the care and treatment of the children.  We address each argument in turn.

---

[6] Mother also asserts that the DCS' evidence fails to show that Mother will not remedy the conditions that resulted in the children's removal, but we need not consider that argument given the disjunctive nature of Indiana Code Section 31-35-2-4(b)(2)(B) and our holding that the trial court's conclusion is justified under subsection (b)(2)(B)(ii).

But first we observe that Mother has included absolutely no citations to the record on appeal in the Argument section of her brief.  The argument in a brief must be "supported by citations to the authorities, statutes, <u>and the Appendix or parts of the Record on Appeal relied on</u> . . . ."  Ind. Appellate Rule 46(A)(8)(a) (emphasis added). Failure to do so may result in waiver of the issue for review.  <u>See</u> <u>City of Indianapolis v. Buschman</u>, 988 N.E.2d 791, 795 (Ind. 2013).  Because the DCS and the Court Appointed Special Advocate ("the CASA") provided adequate citations to the Record in their respective Appellee's Briefs, we will review the issues raised on appeal.  But we caution counsel to comply with the rule in the future or risk waiver of the issues presented.

**Issue One:  Whether Continuation of the Parent-Child Relationship Poses a Threat to the Children's Well-being**

We first consider Mother's assertion that continuation of the parent-child relationships does not pose a threat to the children's well-being.  A juvenile court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his physical, mental, and social growth is permanently impaired before terminating the parent-child relationship.  <u>Shupperd v. Miami Cnty. Div. of Family & Children (In re E.S.)</u>, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002).  When the evidence shows that the emotional and physical development of a child in need of services is threatened, termination of the parent-child relationship is appropriate.  <u>Id.</u>

In support of her contention on this issue, Mother challenges part of one finding by the juvenile court:

> Mother had a very limited understanding of what needed to be done. Mother did not even know how to protect herself from harm.  Mother met a man at the visitation site that ended up abusing her so bad [sic] that she

10

needed to be hospitalized. Mother could not make proper decisions for herself.

Appellant's App. at ii. Mother alleges that the juvenile court "mischaracterized the evidence" because she did not meet the man in question at visitation. Instead, he had accompanied her to a visitation setting.

Even if we disregard the finding that Mother challenges, the remaining findings of the juvenile court are sufficient to show that the continuation of the parent-child relationship poses a threat to the well-being of the Children. The court found that Mother has not maintained stable housing, is in need of a guardian for herself due to her cognitive disability, is unable to care for herself much less care for the Children, does not have the mental capacity to understand the needs of the Children, will be unable to independently parent the Children without putting the Children at risk, some of the services offered to Mother were closed due to her non-participation, Mother was "unable to comprehend and did not progress in her parenting skills in the individual parenting classes, Mother had "years of services" and "still is unable to parent her children independently[,]" and Mother is "unable to meet the basic needs of her children." Appellant's App. at iii-iv.

Again, the trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his physical, mental, and social growth is permanently impaired before terminating the parent-child relationship. Shupperd, 762 N.E.2d at 1290. Given Mother's lack of stable housing, the lack of her ability to provide adequate care for herself or her children, and Mother's inability to satisfactorily complete the services provided to her, she cannot show that she will be able to provide adequate care or

permanency for the children in the future. Mother cannot demonstrate that the juvenile court's conclusion that continuation of the parent-child relationships poses a threat to the children's well-being is clearly erroneous. We agree with the juvenile court that the termination of Mother's parental rights over the children was appropriate under Indiana Code Section 31-35-2-4(b)(2)(B)(ii).

### Issue Two: Whether Termination is in the Children's Best Interests

Mother also argues that the DCS failed to show that termination of the parent-child relationships is in the children's best interests. In determining what is in the best interests of a child, the trial court is required to look beyond the factors identified by the DCS and to consider the totality of the evidence. Stewart v. Ind. Dep't of Child Servs. (In re J.S.), 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). We have previously held that the recommendations of the case manager and CASA to terminate parental rights, in addition to evidence that the continuation of the parent-child relationship poses a threat to the child, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. M.M. v. Elkhart Office of Family & Children (In re M.M.), 733 N.E.2d 6, 13 (Ind. Ct. App. 2000).

Here, in addition to the evidence described above in Issue One, family case manager Shavon King testified that termination of Mother's parent-child relationships with the Children was in the Children's best interests. In particular, she stated that termination was in the children's best interests because Mother "doesn't have the ability to meet the children's day-to-day needs to keep them safe, to provide for them, to be discretionary or any of those." Transcript at 54. An attempt to identify an able family

12

member willing to assist Mother fell through. And a second family case manager, Kendal Vanscoyk, testified that Mother cannot provide the "proper nurturing that they would need to grow up to be normal and be successful in school" given at least one child's own disabilities. Id. at 71. Similarly, the CASA filed an appellee's brief arguing in favor of termination of parental rights. Accordingly, the juvenile court's conclusion that termination of Mother's parental rights over the Children is in the Children's best interests is not clearly erroneous.

### Issue Three: Satisfactory Plan

Finally, Mother contends that the trial court erred when it concluded that the DCS has a satisfactory plan for the care and treatment of the children. In order for the trial court to terminate the parent-child relationship the trial court must find that there is a satisfactory plan for the care and treatment of the child. In re Termination of Parent-Child Relationship of D.D., 804 N.E.2d 258, 268 (Ind. Ct. App. 2004), trans. denied. This plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. Id.

Here, Mother argues that "foster care is like a two-edged sword" because the time the children spend in foster care later weighs in favor of leaving the children there. Appellant's Brief at 12. She also argues that she and Grandmother have taken great pains to "start anew and create a home environment conducive for their family structure." Appellant's Brief at 12. But these arguments do not address the adequacy of the DCS' plan for the children. Instead, they pertain to the basis for terminating parental rights. As such, they are inapposite here.

We have acknowledged that adoption is a satisfactory plan.  See <u>H.G. v. Ind.</u> <u>Dep't of Child Servs.</u>, 959 N.E.2d 272, 294 (Ind. Ct. App. 2011).  Mother has not demonstrated evidence to the contrary.  Therefore, her argument on this issue must fail.

**Conclusion**

Mother has not demonstrated that the trial court clearly erred when it determined that continuation of the parent-child relationship with the Children poses a threat to their well-being.  Nor has Mother shown that termination is not in the best interest of the Children or that the court erred when it determined that adoption is a satisfactory plan following the terminations.  As such, we affirm the juvenile court's order terminating Mother's parental rights.

Affirmed.

MATHIAS, J., and BROWN, J., concur.