Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Feb 28 2014, 10:23 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**DANIEL G. PAPPAS**
Fort Wayne, Indiana

**ROBERTA L. RENBARGER**
Renbarger Law Office
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
**ROBERT J. HENKE**
**CHRISTINE REDELMAN**
Office of the Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION OF THE )
PARENT-CHILD RELATIONSHIP OF Q.L. and M.L., )
                                          )
M.F., Jr., and N.L.,                        )
                                          )
        Appellants-Respondents,       )
                                            )
           vs.                       )      No. 02A03-1308-JT-344
                                            )
INDIANA DEPARTMENT OF CHILD SERVICES,    )
                                            )
        Appellee-Petitioner.          )

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Thomas P. Boyer, Judge Pro Tempore
The Honorable Lori K. Morgan, Magistrate
Cause Nos. 02D08-1211-JT-131 and 02D08-1211-JT-132

**February 28, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATMENT OF THE CASE

N.L. ("Mother") appeals the trial court's termination of her parental rights with respect to her two minor children, Q.L. and M.L. ("the children"). M.F. ("Father") appeals the trial court's termination of his parental rights with respect to Q.L., his minor son.[1] Mother and Father (collectively, "the Parents") raise five issues for our review, which we consolidate and restate as the following two issues:

1. Whether Father has demonstrated reversible error on his claim that the trial court abused its discretion when it permitted the Department of Child Services ("DCS") to amend its petition for the involuntary termination of Father's parental rights to conform with the evidence presented during the fact-finding hearing.

2. Whether the trial court clearly erred when it concluded that the continuation of Mother's parent-child relationships poses a threat to the children, that the continuation of Father's parent-child relationship poses a threat to Q.L., and that the termination of Father's parental rights over Q.L. is in Q.L.'s best interests.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Mother is the mother of Q.L., born in 2005, and M.L., born in 2009. Father is the father of Q.L. In 2009 and the first half of 2010, Mother and Father lived together with the children. During this time, Father sexually molested Q.L. and, in October of 2009, Father gave Q.L. herpes. Mother was aware of Father's molestation of Q.L. and knew in October of 2009 that Q.L. had contracted herpes from Father. Nonetheless, Father continued to reside with Mother and the children.

---

[1] The trial court also terminated the parental rights of M.A. with respect to M.L., his minor child. M.A. does not participate in this appeal.

In July of 2010, the DCS filed a petition alleging Q.L. and M.L. to be children in need of services based on Father's molestation of Q.L. The court subsequently adjudicated the children to be children in need of services. On April 15, 2011, the State arrested Father and charged him with several counts of child molesting. Father eventually pleaded guilty to child molesting, as a Class B felony, and was sentenced to twenty years, with five years suspended and three years of probation.

In January of 2012, M.A., the father of M.L., moved in with Mother. M.A. had just been released from prison following his sentence for battering Mother while Mother was pregnant with M.L. Upon his release, the court ordered M.A. to have no contact with M.L. Mother did not inform the DCS that M.A. had moved in with her, and, when she was given the opportunity to have unsupervised visits with her children at her home, Mother declined because she did not want to ask M.A. to leave the home. Mother continues to live with M.A. despite another arrest for domestic battery involving Mother, and they have had another child together.

On November 27, 2012, the DCS filed its petition for the involuntary termination of the Parents' parental rights over the children. The court held a fact-finding hearing on the DCS's petition in May of 2013. At that hearing, both the DCS's family case manager ("FCM") and the guardian ad litem ("GAL") testified that termination of the Parents' parental rights was in the children's best interests and consistent with the children's need for permanency. Following the close of the DCS's case-in-chief, the DCS moved to amend its petition to conform to the evidence pursuant to Indiana Trial Rule 15(B), which the

court granted over Father's objection. Thereafter, the court entered thorough findings of fact and conclusions thereon terminating the Parents' parental rights. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Trial Rule 15(B)

We first address Father's argument that the trial court abused its discretion when it permitted the DCS to amend its petition for the involuntary termination of Father's rights during the fact-finding hearing. In particular, at the close of the DCS's case-in-chief the DCS moved to amend its petition to conform to the evidence of Father's conviction for child molesting pursuant to Indiana Code Section 31-35-3-4. On appeal, Father asserts that the trial court abused its discretion when it granted the DCS's motion because doing so "relieved the DCS of having to prove, through other evidence, that there is a reasonable probability that the conditions which resulted in the removal of the child will not be remedied, or that continuation of the parent-child relationship poses a threat to the well-being of the child." Father's Br. at 7.

Father has not carried his burden on appeal to show reversible error. Trial Rule 15(B), which Father wholly fails to discuss in his brief, permits an amendment to conform to the evidence "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties . . . ." Father does not suggest that he objected to the DCS's admission of the evidence of his conviction, that he requested a continuance following the admission of this evidence, that he did not have notice of this evidence, or that he did not have a reasonable opportunity to prepare for this evidence. See, e.g., Bailey v. State Farm Mut. Auto Ins. Co., 881 N.E.2d 996, 1000-01 (Ind. Ct. App. 2008). Indeed, Father

4

recognizes that his conviction for molesting Q.L. happened more than a year prior to the termination hearing. In short, Father cannot demonstrate how the trial court's decision to allow the amendment under Trial Rule 15(B) affected his substantial rights. See Ind. Appellate Rule 66(A). As such, we affirm the trial court's decision on this issue.

**Issue Two: Sufficiency of the Evidence**

We begin our review of this issue by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." Bailey v. Tippecanoe Cnty. Div. of Family & Children (In re M.B.), 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), trans. denied. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. Schultz v. Porter Cnty. Ofc. of Family & Children (In re K.S.), 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. Id. at 836.

Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove, among other things:

> (B) that one (1) of the following is true:
> (i) There is a reasonable probability that the conditions that resulted
> in the child's removal or the reasons for placement outside the home
> of the parents will not be remedied.
> (ii) There is a reasonable probability that the continuation of the
> parent-child relationship poses a threat to the well-being of the child.
> * * *
> (C) [and] that termination is in the best interests of the child . . . .

5

Ind. Code § 31–35–2–4(b)(2).[2] That statute provides that DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights.

In this appeal, we need only consider subsection (ii), that the continuation of the parent-child relationships poses a threat to the well-being of the children. Under this subsection:

> a trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that her physical, mental, and social growth is permanently impaired before terminating the parent-child relationship. When the evidence shows that the emotional and physical development of a child in need of services is threatened, termination of the parent-child relationship is appropriate.

Shupperd v. Miami Cnty. Div. of Family & Children (In re E.S.), 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002) (citations omitted).

DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.), 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31–37–14–2). When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. Peterson v. Marion Cnty. Ofc. of Family & Children (In re D.D.), 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), trans. denied. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. Id. Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. Judy S. v. Noble

---

[2] Indiana Code Section 31-35-2-4(b)(2)(B) also allows the DCS to allege that "[t]he child has, on two (2) separate occasions, been adjudicated a child in need of services." But that additional, alternative provision is not relevant here.

6

Cnty. Ofc. of Family & Children (In re L.S.), 717 N.E.2d 204, 208 (Ind. Ct. App. 1999). trans. denied.

Here, in terminating the Parents' parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. Bester v. Lake Cnty. Ofc. of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings[3] and, second, we determine whether the findings support the judgment. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. In re L.S., 717 N.E.2d at 208.

We first consider Mother's argument that the trial court clearly erred when it concluded that the continuation of her relationship with the children posed a threat to the children's well-being. Specifically, Mother argues that she was unable to complete the ordered services because she was suffering from physical and emotional concerns that resulted from a 2010 pregnancy and Mother's loss of that child. Mother also argues that "the originating reason for the case was the molestation" of Q.L. by Father, Mother's Br. at 16, and that the DCS's arguments for the termination of her parental rights are undermined by the DCS's lack of investigation with respect to another child of Mother's, A.L.

---

[3] The DCS incorrectly states that the Parents do not challenge the trial court's findings of fact. Appellee's Br. at 25.

7

Mother's arguments on this issue are merely requests for this court to reweigh the evidence, which we will not do. Mother admitted that she knowingly allowed Father to live with her and the children while he was molesting Q.L. and that she continues to live with M.L.'s father despite their violent relationship. We cannot say the trial court clearly erred when it concluded that the continuation of Mother's relationship with the children posed a threat to the children's well-being.

We next consider Father's suggestion that the trial court clearly erred when it concluded that there was a reasonable possibility that continuation of Father's relationship with Q.L. posed a threat to Q.L.'s well-being. Father's purported argument on this issue is not supported by cogent reasoning and is therefore waived. See App. R. 46(A)(8)(a). As noted above, at the time of the fact-finding hearing Father was serving a twenty-year sentence in the Department of Correction for having molested Q.L. In his brief on appeal, Father recognizes this but then argues only that his continued incarceration shows that the problems have been remedied. But, again, we need not discuss that alternative basis for the termination of Father's parental rights. See I.C. § 31-35-2-4(b)(2)(B). Father's argument on appeal does not cogently challenge the trial court's additional conclusion that the continuation of Father's relationship with Q.L. posed a threat to Q.L.'s well-being and, as such, we affirm the trial court's conclusion on that theory.

Finally, Father argues[4] that the trial court erred when it concluded that the termination of his parental rights over Q.L. was in Q.L.'s best interests. In particular, Father argues that "the totality of the evidence shows that [Father] had an alternative and

---

[4] Mother does not challenge the trial court's finding that the termination of her parental rights is in the children's best interests.

8

suitable placement for [Q.L.], that being with the mother or with [Father's] mother or sister." Father's Br. at 11. Father's argument does not cogently address the best interests of Q.L., and it is waived. App. R. 46(A)(8)(a). Waiver notwithstanding, we note that both the FCM and the GAL testified that the termination of Father's parental rights over Q.L. was in Q.L.'s best interests and consistent with Q.L.'s need for permanency. See McBride v. Monroe Cnty. Ofc. of Family & Children, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). Thus, we cannot say that the trial court's conclusion is clearly erroneous.

Affirmed.

BAKER, J., and CRONE, J., concur.