762 N.E.2d 1287 (2002)
In the Matter of the Termination of the Parent-Child Relationship of E.S., Minor Child.
Kim Shupperd, Parent, Appellant-Respondent,
v.
Miami County Division of Family and Children, Appellee-Petitioner.
No. 52A05-0105-JV-197.
Court of Appeals of Indiana.
February 20, 2002.
*1288 Susan K. Carpenter, Public Defender of Indiana, Amy E. Karozos, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.
Robert A. Spahr, Peru, IN, Attorney for Appellee.

OPINION
VAIDIK, Judge.

Case Summary
Kimberly Shupperd appeals the termination of her parental rights to her minor child, E.S. On appeal she asserts three grounds for error: (1) insufficient evidence to support the involuntary termination of her parental rights; (2) failure to comply with Indiana Code § 31-35-2-4.5; and (3) failure to order an independent evaluation. Because we find that the evidence was insufficient to support the termination of Shupperd's parental rights, we reverse.

Facts and Procedural History
On February 17, 1999, an emergency detention order resulted in the removal of E.S., age six, from Shupperd's care because Shupperd failed to adequately care for and supervise E.S., which resulted in E.S. having recurrent head lice, poor personal hygiene and appearance, and poor school performance. Following a detention hearing on February 19, 1999, the court noted that E.S. "is a special needs child being mildly mentally handicapped and is socially delayed, being unable to adequately communicate" and that E.S.'s biological parents were unable to provide her with adequate care and supervision. Appellant's App. P.77. Consequently, the court ordered that E.S. be made a ward of the Miami County Division of Family and Children (DFC) and be placed in therapeutic foster care. The court also authorized the DFC to file a petition alleging E.S. to be a child in need of services (CHINS).
From February 18 to August 2, 1999, E.S. remained in the same foster home placement. During this time, she underwent play therapy with Tonya Aleshire. Aleshire noted that E.S.'s play became increasingly more violent and aggressive right before and after visitation with Shupperd. After receiving a complaint from the foster parents on July 26, 1999, that E.S. was too difficult to control, the DFC had E.S. hospitalized for inpatient psychiatric treatment. Upon being released from hospitalization, the DFC moved E.S. into a different foster placement and E.S. began seeing a new therapist, Jeffrey Valerio, who used methods other than play therapy. After a psychiatrist noted that E.S. was a danger to herself and others, E.S. was again hospitalized from September 7 to September 16, 1999. Upon returning to her foster placement, E.S. continued to receive outpatient treatment. E.S.'s psychiatrist prescribed Risperdal, an antipsychotic medication, to assist in controlling E.S.'s behavioral problems in mid-September of 1999. Her foster mother noted a complete change in E.S.'s behavior after she began taking Risperdal.
After initially denying the allegations, Shupperd admitted E.S. was a CHINS on September 15, 1999. The court accepted Shupperd's admission and found that E.S. was a CHINS "based on gross neglect of the biological mother to provide the minor ward with necessary clothing and supervision thus endangering the physical and/or emotional health of the minor ward." Appellant's App. P.92. Further, the court terminated Shupperd's visitation rights due to E.S.'s deteriorating behavior following previous contacts with Shupperd. Additionally, the court ordered that services be suspended until visitation was resumed. While the DFC did not require Shupperd to attend any services or offer her any *1289 services, Shupperd elected to continue with counseling and to seek parenting classes on her own.
On January 26, 2000, a permanency hearing was held at which E.S.'s father voluntarily relinquished his parental rights. The court also found that there had not yet been a recommendation from E.S.'s psychiatrist or therapist that visitation be resumed. The court determined that if visitation was not recommended to resume within the next six months, then the court would authorize the DFC to file a petition to involuntarily terminate Shupperd's parental rights.
Following the CHINS review hearing on July 12, 2000, the court found that there was still no recommendation that visitation be resumed. Consistent with its previous order, the court authorized the DFC to seek the involuntary termination of Shupperd's parental rights. On November 9, 2000, the DFC filed a petition for the involuntary termination of Shupperd's parental rights, which the court granted on March 12, 2001, after conducting a fact-finding hearing. This appeal ensued.

Discussion and Decision
Shupperd maintains that the trial court erred in involuntarily terminating her parental rights to E.S. Specifically, Shupperd alleges three bases for error: (1) insufficient evidence to support the involuntary termination of her parental rights; (2) failure to comply with Indiana Code § 31-35-2-4.5;[1] and (3) failure to order an independent evaluation. Because we find the issue of whether the evidence was sufficient to support the termination of Shupperd's parental rights dispositive, we need not address the other grounds for error alleged by Shupperd.
Shupperd contends that the trial court's decision to terminate her parental rights is not supported by sufficient evidence. In particular, Shupperd claims that the DFC failed to prove the necessary elements in order to involuntarily terminate her parental rights. Indiana Code § 31-35-2-4(b)(2) sets forth the elements that must be alleged in a petition to terminate parental rights as follows:
(b) The petition must:
* * * *
(2) allege that:
(A) one (1) of the following exists:
(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
(ii) a court has entered a finding under IC XX-XX-XX-X.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
(iii) after July 1, 1999, the child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months;
(B) there is a reasonable probability that:
(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or

*1290 (ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;
(C) termination is in the best interests of the child; and
(D) there is a satisfactory plan for the care and treatment of the child.
The DFC must prove each of these elements by clear and convincing evidence. Ind.Code § 31-37-14-2; In re L.S., 717 N.E.2d 204, 208 (Ind.Ct.App.1999), reh'g denied, trans. denied. Shupperd, however, maintains that the DFC failed to meet its burden in that it did not prove by clear and convincing evidence that there is a reasonable probability that the conditions that resulted in E.S.'s removal or the reason for placement outside of Shupperd's home will not be remedied; or that the continuation of the parent-child relationship poses a threat to the well-being of E.S.
We begin by noting that a trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that her physical, mental, and social growth is permanently impaired before terminating the parent-child relationship. J.K.C. v. Fountain County Dep't of Pub. Welfare, 470 N.E.2d 88, 93 (Ind.Ct.App. 1984). When the evidence shows that the emotional and physical development of a child in need of services is threatened, termination of the parent-child relationship is appropriate. In re L.S., 717 N.E.2d at 208.
We recently reiterated in M.H.C. v. Hill that:
[t]he involuntary termination of parental rights is an extreme measure that terminates all rights of the parent to his or her child and is designed to be used only as a last resort when all other reasonable efforts have failed. The Fourteenth Amendment to the United States Constitution provides parents with the rights to establish a home and raise their children. However, the law allows for termination of those rights when the parties are unable or unwilling to meet their responsibility as parents. This policy balances the constitutional rights of the parents to the care and custody of their children with the State's limited authority to interfere with these rights. Because the ultimate purpose of the law is to protect the child, the parent-child relationship must give way when it is no longer in the child's best interest to maintain the relationship.
750 N.E.2d 872, 875 (Ind.Ct.App.2001) (citations omitted). Thus, we will not set aside a trial court's judgment terminating a parent-child relationship unless we determine it is clearly erroneous. Id. at 875. Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences to support them. Id. In determining whether the evidence is sufficient to support the judgment terminating parental rights, this court neither reweighs the evidence nor judges the credibility of witnesses. Id.
In its findings, the court stated that:
Continuation of the parent-child relationship between [E.S.] and Kimberly poses a threat to the well-being of [E.S.] since it is apparent that [E.S.] does not wish to be reunited with Kimberly, and Kimberly cannot be expected to modify her behavior in order to meet the emotional and behavioral needs of [E.S.] for structure.
Appellant's Br. P.26. Moreover, in its conclusions, the court opined:
[T]here is no reasonable probability that the conditions that resulted in the child's removal will be remedied and for the further reason that continuation of the parent-child relationship poses a threat to the well-being and mental health of *1291 the child due to the biological mother's mental retardation and inability to bond with the child and her demonstrated failure to provide the child with appropriate hygiene, care, supervision, and supervision which has resulted in irreversible damage to the child's mental health as a result of such abuse and neglect by Kimberly Shupperd.
Appellant's Br. P.27 (emphasis in original).
First, Shupperd contends that the DFC did not provide evidence sufficient to support a finding that the conditions that resulted in E.S.'s removal or the reasons for placement outside of Shupperd's care will not be remedied. We agree with Shupperd's contention in light of the fact that the DFC did not provide her with any services or conduct any type of evaluation of the progress Shupperd was making in counseling. Even though the DFC did not mandate that Shupperd obtain services, she actively sought assistance on her own. Specifically, Shupperd regularly attended counseling. In addition, she also attended parenting classes, which she excelled at according to her instructor. The DFC, however, did not monitor Shupperd's progress in these programs. Thus, the decision to terminate Shupperd's parental rights appears to be based not on Shupperd's inadequacies as a parent but rather on the extraordinary needs of this child. Without clear and convincing evidence to support a finding that the conditions that resulted in E.S.'s removal or the reasons for placement outside of Shupperd's care will not be remedied, we cannot affirm the court's decision to terminate Shupperd's parental rights based on this prong.
Even though we find that the DFC did not provide clear and convincing evidence that the conditions that resulted in E.S.'s removal or the reasons for placement outside of Shupperd's care will not be remedied, the court's decision to terminate Shupperd's parental rights can be upheld if the DFC proved by clear and convincing evidence that the continuation of the parent-child relationship poses a threat to the well-being of E.S. Shupperd claims, and we agree, that the DFC did not satisfy its burden. Shupperd maintains that the court's conclusion that the continuation of the parent-child relationship was a threat to E.S.'s well-being was premature. Particularly, Shupperd asserts that while E.S.'s behavior improved after the court terminated Shupperd's visitation rights,
at this same time, E.S. also changed foster homes, was put on psychotropic medications, and changed therapists and therapy methods. Her improvement could have been a result of any of these factors or a combination. Because visitation was never reintroduced, it could not be proven that maintaining the parent-child relationship posed a threat to E.S.
Appellant's Br. P.12.
Additionally, we note that the CASA for E.S. included the following statement in her recommendations filed with the court in December of 2000:
[P]erhaps a visitation with Kimberly is in order to find out if reunification is possible. Usually, this CASA is sure of what the decision regarding a child's welfare should be, but not this time. If the Court does not try at least one visitation, then, will anyone ever know if reunification is possible?
Appellant's App. P.139. However, visitation was never resumed. Given the myriad of changes that occurred in E.S.'s treatment around the same time that visitation was *1292 terminated and the fact that visitation was never reintroduced after these changes, we find the evidence insufficient to prove that the maintenance of the parent-child relationship poses a threat to E.S.'s well-being.
Without clear and convincing evidence to support each of the factors set forth in Indiana Code § 31-35-2-4(b)(2), we cannot terminate a parent-child relationship. Thus, the trial court's decision to terminate Shupperd's parental rights must be set aside.
Judgment reversed.
FRIEDLANDER J., and BARNES, J., concur.
NOTES
[1] Indiana Code § 31-35-2-4.5 sets forth the circumstances under which a party must file, and the court must grant, a motion to dismiss a petition to terminate parental rights.