**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 19 2013, 9:13 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOANN M. PRICE**
Merrillville, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT J. HENKE**
Indiana Department of Child Services
Indianapolis, Indiana

**EUGENE M. VELAZCO, JR.**
Indiana Department of Child Services
Gary, Indiana

**DONALD W. WRUCK**
Wruck Paupore PC
Dyer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF S.K.W. and D.L.W.J.: | ) ) ) ) | |
| D.W., | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 45A03-1206-JT-293 |
| INDIANA DEPARTMENT OF CHILD SERVICES and LAKE COUNTY COURT APPOINTED SPECIAL ATTORNEY, | ) ) ) ) ) | |
| Appellees-Petitioners. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Mary Beth Bonaventura, Judge
Cause No. 45D06-1101-JT-29 and 45D06-1101-JT-30

**February 19, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

D.W. ("Mother") appeals the trial court's termination of her parental rights over her minor children S.K.W. and D.L.W.J. ("the children"). Mother raises the following issues for our review:

> 1. Whether the trial court's conclusion that continuation of the parent-child relationships poses a threat to the children is clearly erroneous;
>
> 2. Whether the trial court's conclusion that termination of Mother's parental rights over the children is in the children's best interests is clearly erroneous; and
>
> 3. Whether the trial court's conclusion that the Indiana Department of Child Services ("DCS") has a satisfactory plan for the care and treatment of the children is clearly erroneous.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Mother gave birth to S.K.W. on February 11, 1999, and to D.L.W.J. on June 18, 2006. The children's fathers did not marry Mother, and the fathers did not participate in the children's lives in a consistent or meaningful way.[1] In April 2009, DCS filed petitions alleging that the children were children in need of services ("CHINS") due to Mother's substance abuse and "physical neglect" and abuse of the children. Appellant's App. at i. The children became wards of DCS and were placed in foster care.

The trial court issued the following findings and conclusions setting out the remaining facts and procedural history of this case:

> A case plan for reunification was set up for the parents which included psychological evaluations, psychiatric evaluation, substance abuse

---

[1] The children's fathers' parental rights have also been terminated, but they do not participate in this appeal.

assessment, random drug screens, parenting classes, individual counseling, supervised visitations and mother to attend A/A meetings.

Numerous contacts were initiated with mother. Mother would schedule meetings with the service providers and case manager, but would not show up for the meetings. Numerous attempts were made to try to contact mother, but to no avail. Mother's whereabouts were unknown to the Department of Child Services. Mother knew that the Department of Child Services had custody of her children, but [she] made no attempts to notify the case manager or see her children until November 2009, seven months after the children were taken into custody.

Mother admitted to having a long term substance abuse problem. Mother was referred to Transitions for inpatient treatment. Mother was put on the waiting list, but never attended. Transitions closed out their case with mother because mother did not keep in contact with Transitions. Mother did not participate in any services offered to her by the Department of Child Services. Mother was not compliant with the case plan. Mother moved out of Lake County and moved to Lafayette and never completed any services for reunification. All services were closed due to mother's non-compliance. Mother did not have stable housing.

Mother was offered to restart services once she would submit clean drug screens to the case manager, but mother failed to follow through.

Mother, by her own testimony, indicated that she had a very long term substance abuse history. Mother indicated that she started counseling in December 2011 when she was homeless, living in a shelter and had just given birth to a third child. Mother has not established any stability in her life. Mother has just recently obtained sobriety for the first time in her life and that does not change the fact that the mother has a long history of substance abuse with only a few short months of sobriety.

* * *

None of the parents are providing any emotional or financial support for the children. None of the parents have completed any case plan for reunification. None of the parents seem interested in caring for their children. None of the parents have maintained any contact with the children. The children have been in placement for three years and have not been returned to parental care or custody.

Appellant's App. at i-ii. DCS filed petitions to terminate Mother's parental rights with respect to the children. Following a hearing, the trial court entered the following conclusions:

There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child in that: for the

3

reasons stated above. Additionally, the children deserve a loving, caring, safe, stable and drug[-]free home.

It is in the best interest[s] of the child[ren] and their health, welfare and future that the parent-child relationship between the child[ren] and their parents be forever fully and absolutely terminated.

The Lake County Division of Family and Children has a satisfactory plan for the care and treatment of the child which is Adoption.

Id. at ii-iii. Accordingly, the trial court ordered that Mother's parental rights to both children were terminated. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

We begin our review by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." Bailey v. Tippecanoe Div. of Family & Children (In re M.B.), 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), trans. denied. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. Schultz v. Porter Cnty. Office of Family & Children (In re K.S.), 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. Id. Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. Id. at 836.

Before an involuntary termination of parental rights can occur in Indiana, the DCS is required to allege and prove, among other things:

4

(B) that one (1) of the following is true:

> (i)  There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> (ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

* * *

(C) [and] that termination is in the best interests of the child . . . .

Ind. Code § 31-35-2-4(b)(2).[2]  That statute provides that DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights.  The DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'"  <u>R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)</u>, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. <u>Peterson v. Marion Cnty. Office of Family & Children (In re D.D.)</u>, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), <u>trans. denied</u>.  Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment.  <u>Id.</u>  Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous.  <u>Judy S. v. Noble Cnty. Office of Family & Children (In re L.S.)</u>, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999). <u>trans. denied</u>.

---

[2]  Indiana Code Section 31-35-2-4(b)(2)(B) also allows the DCS to allege that "[t]he child has, on two (2) separate occasions, been adjudicated a child in need of services."  But that additional, alternative provision is not relevant here.

5

Here, in terminating Mother's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. In re L.S., 717 N.E.2d at 208.

Mother does not challenge the trial court's findings of fact in its order terminating her parental rights. Rather, Mother challenges only the court's legal conclusions that, on these facts, termination of her parental rights is justified because a continuation of the parent-child relationships poses a threat to the children's well-being,[3] that the termination of her parental rights is in the children's best interests, and that DCS has a satisfactory plan for the care and treatment of the children. We address each argument in turn.

### Issue One: Whether Continuation of the Parent-Child Relationship Poses a Threat to the Children

We first consider Mother's assertion that continuation of the parent-child relationships does not pose a threat to the children. A trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his physical, mental, and social growth is permanently impaired before terminating the parent-child relationship.

---

[3] Mother also asserts that the DCS's evidence fails to show that Mother will not remedy the conditions that resulted in the children's removal, but we need not consider that argument given the disjunctive nature of Indiana Code Section 31-35-2-4(b)(2)(B) and our holding that the trial court's conclusion is justified under on subsection (b)(2)(B)(ii).

6

Shupperd v. Miami Cnty. Div. of Family & Children (In re E.S.), 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002). When the evidence shows that the emotional and physical development of a child in need of services is threatened, termination of the parent-child relationship is appropriate. Id.

In support of her contention on this issue, Mother directs us to evidence showing that she has "gone through the well-established and accepted steps to secure sobriety" and has become "independent and established on her own." Brief of Appellant at 10. Mother further points out that she has made "substantial therapeutic strides" since court-ordered services were terminated. Id. at 11. Thus, she maintains that the trial court's "findings here are insufficient and do not make a plausible connection between Mother's present fitness to parent her children and the likelihood that her state, at the time of fact finding, would expose the children to hurt, harm or danger." Id.

But Mother's contention on this issue amounts to a request that we reweigh the evidence, which we will not do. Indeed, Mother does not challenge any of the trial court's findings on appeal. The evidence shows that Mother was non-compliant with the case plan for reunification and only recently made any effort to comply with services. Mother's participation in individual therapy was sporadic, at best, and that therapy was terminated for her non-compliance; Mother did not maintain contact with the DCS case worker for months at a time; and Mother did not complete substance abuse treatment. Moreover, Mother had ceased visitation with the children. Mother's supervised visits with S.K.W. had been ordered terminated as of May 2010, as a result of Mother's

noncompliance with the case plan. And at the time of the termination hearing in April 2012, Mother had not seen D.L.W.J. for approximately eighteen months.

Again, the trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his physical, mental, and social growth is permanently impaired before terminating the parent-child relationship. Shupperd, 762 N.E.2d at 1290. Given Mother's long history of substance abuse and inability to maintain stable housing or employment, the lack of certainty as to whether Mother's sobriety would be maintained, as well as Mother's failure to visit the children for well over a year prior to the final hearing, Mother cannot show that she will be able to provide adequate care or permanency for the children in the future. Indeed, while Mother reported that she had recently maintained sobriety and sought treatment for her substance abuse, she was unable to produce documentation of those assertions when asked to do so. Mother has not demonstrated that the trial court's conclusion that continuation of the parent-child relationships poses a threat to the children's well-being is clearly erroneous. Accordingly, we agree with the trial court that the termination of Mother's parental rights over the children was appropriate under Indiana Code Section 31-35-2-4(b)(2)(B)(ii).

### Issue Two: Whether Termination is in the Children's Best Interests

Mother also argues that the DCS failed to show that termination of the parent-child relationships is in the children's best interests. In determining what is in the best interests of a child, the trial court is required to look beyond the factors identified by the DCS and to consider the totality of the evidence. Stewart v. Ind. Dep't of Child Servs. (In re J.S.), 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). We have previously held that the

recommendations of the case manager and CASA to terminate parental rights, in addition to evidence that the continuation of the parent-child relationship poses a threat to the child, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. M.M. v. Elkhart Office of Family & Children (In re M.M.), 733 N.E.2d 6, 13 (Ind. Ct. App. 2000).

Here, in addition to the evidence described above in Issue One, Wanda Clemmons, a DCS case manager, testified that termination of Mother's parent-child relationships with the children was in the children's best interests. In particular, Clemmons stated that termination was in the children's best interests because she feels they need "stability, nurturing[,] and. . .a drug-free environment." Transcript at 130. Accordingly, the trial court's conclusion that termination of Mother's parental rights over the children is in the children's best interests is not clearly erroneous. See id.

**Issue Three: Satisfactory Plan**

Finally, Mother contends that the trial court erred when it concluded that DCS has a satisfactory plan for the care and treatment of the children. In order for the trial court to terminate the parent-child relationship the trial court must find that there is a satisfactory plan for the care and treatment of the child. In re Termination of Parent-Child Relationship of D.D., 804 N.E.2d 258, 268 (Ind. Ct. App. 2004). This plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. Id.

Here, Mother maintains that placing the children in separate adoptive homes is detrimental to their well-being. But the evidence supports the trial court's determination

9

that DCS has a satisfactory plan for the care and treatment of the children, namely, adoption. And DCS presented testimony indicating that the children visit one another on a weekly basis. Finally, the evidence shows that the children's foster parents intend to continue visitation between the siblings post-adoption. The trial court's determination on this issue is not clearly erroneous.

## Conclusion

In sum, the trial court's order terminating Mother's parental rights over the children is not clearly erroneous. The trial court concluded that continuing the parent-child relationships would pose a threat to the children and is not in the children's best interests. In addition, the trial court concluded that DCS has a satisfactory plan for the care and treatment of the children. The court's conclusions are supported by its findings and its findings are supported by the evidence. Accordingly, we affirm the trial court's termination of Mother's parental rights over the children.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.