**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 27 2014, 10:05 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**GILDA W. CAVINESS**
Caviness Law Office, LLC
Rushville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General
Indianapolis, Indiana

**DAVID E. COREY**
Indiana Department of Child Services
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION OF ) 
THE PARENT-CHILD RELATIONSHIP OF L.B. ) 
AND J.B., ) 
                                                           ) 
W.B., ) 
                                                           ) 
    Appellant-Respondent, ) 
                                                           ) 
        vs. )     No. 73A04-1310-JT-545
                                                           ) 
INDIANA DEPARTMENT OF CHILD SERVICES, ) 
                                                           ) 
    Appellee-Petitioner. ) 

APPEAL FROM THE SHELBY SUPERIOR COURT
The Honorable Jack A. Tandy, Judge
Cause Nos. 73D01-1306-JT-1 and 73D01-1306-JT-2

**May 27, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

W.B. ("Father") appeals the trial court's termination of his parental rights over his minor children L.B. and J.B. ("the children"). Father raises a single issue for our review, namely, whether the Indiana Department of Child Services ("DCS") presented sufficient evidence to support termination of his parental rights.

We affirm.[1]

**FACTS AND PROCEDURAL HISTORY**

Father and E.B. ("Mother") (collectively "Parents") were married and had three children together, namely, D.B., birthdate unknown; L.B., born August 13, 2005; and J.B., born October 26, 2009. In April 2007, L.B. was declared to be a child in need of services ("CHINS"), and in December 2008 a trial court terminated Parents' parental rights with respect to D.B. On July 26, 2012, after DCS found Parents' home to be unsanitary, the trial court found L.B. and J.B. to be CHINS, and both children were removed from Parents' custody in September.

The trial court entered a dispositional decree and ordered Parents to participate in services including home-based services. The trial court also ordered Parents to maintain suitable, safe, and stable housing with adequate bedding, functional utilities, adequate supplies of food and food preparation facilities, and to keep the residence in a manner that is sanitary, clean, free from clutter, and safe for the children. In July 2012, Marsha Fisher, a parent aide with Fountain Consultants, began working with Parents in their home, and Fisher found the residence to be "filthy with trash, roaches, feces, and an

---

[1] The children's mother has executed consents for the children to be adopted and, therefore, does not participate in this appeal.

overwhelming stench." Appellant's App. at 36. Father refused to work with Fisher and threatened her with an "ass whipping." Id.

Because of Father's threats, Rick Morphew of Fountain Consulting began assisting Fisher with home visits and efforts to teach Parents how to clean and maintain their home. Fisher and Morphew worked with Mother to remove trash from the home, but Father refused to participate and claimed that cleaning was "women's work." Id. at 37. Fisher and Morphew also discovered that Parents were removing some of the trash from the dumpster after Fisher and Morphew had disposed of it. In September 2012, Father stated, "I'll get my kids back, kill DCS and kill that bitch that turned us in." Id. at 36. Father displayed other inappropriate behavior. For instance, one time when J.B. was visiting, he pulled his shirt up over his stomach, and Father yelled, "put your shirt down and quit showing your mother****ing tits." Id. at 37. In May 2013, Father and Mother divorced. And in June 2013, Father ceased his aggressive behavior toward Morphew, but Father continued to be "unwilling to change his parenting techniques." Id. After his divorce from Mother, Father moved in with a girlfriend and her adult autistic son in a two-bedroom apartment in Westport.

In June 2013, Mother agreed to voluntarily terminate her parental rights to the children. And following a factfinding hearing, the trial court terminated Father's parental rights to the children. This appeal ensued.

## DISCUSSION AND DECISION

We begin our review of this appeal by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth

Amendment of the United States Constitution." Bailey v. Tippecanoe Div. of Family & Children (In re M.B.), 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), trans. denied. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. Schultz v. Porter Cnty. Ofc. of Family & Children (In re K.S.), 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. Id. Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. Id. at 836.

Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove, among other things:

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

* * *

(C) [and] that termination is in the best interests of the child . . . .

4

Ind. Code § 31-35-2-4(b)(2).[2] That statute provides that DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights. DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.), 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. Peterson v. Marion Cnty. Ofc. of Family & Children (In re D.D.), 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), trans. denied. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. Id. Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. Judy S. v. Noble Cnty. Ofc. of Family & Children (In re L.S.), 717 N.E.2d 204, 208 (Ind. Ct. App. 1999). trans. denied.

Here, in terminating Father's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. Bester v. Lake Cnty. Ofc. of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671

---

[2] Indiana Code Section 31-35-2-4(b)(2)(B) also allows DCS to allege that "[t]he child has, on two (2) separate occasions, been adjudicated a child in need of services." But that additional, alternative provision is not relevant here.

5

N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. In re L.S., 717 N.E.2d at 208.

Father does not challenge the trial court's findings of fact in its order terminating his parental rights. Rather, Father challenges only the court's legal conclusions that, on these facts, termination of his parental rights is justified because a continuation of the parent-child relationships poses a threat to the children's well-being; termination is in the children's best interests; and the DCS has a satisfactory plan for the children's care and treatment.[3] We address each issue in turn.

## Children's Well-Being

Father first contends that "DCS failed to prove that the conditions that led to the children's removal would not be remedied or that continuation of the parent-child relationship posed a threat to J.B.'s well-being."[4] Appellant's Brief at 5. But Father's argument focuses solely on the conditions that led to the children's removal. Father makes no cogent argument to support his contention that the evidence is insufficient to prove that continuation of the parent-child relationship posed a threat to J.B.'s well-being. Accordingly, the issue is waived.

Waiver notwithstanding, a trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his physical, mental, and social growth is permanently impaired before terminating the parent-child relationship. Shupperd v.

---

[3] Father also contends that the DCS did not prove that Father will not remedy the conditions that resulted in the children's removal, but we need not consider that argument given the disjunctive nature of Indiana Code Section 31-35-2-4(b)(2)(B) and our holding that the trial court's conclusion is justified under subsection (b)(2)(B)(ii).

[4] Father does not challenge the sufficiency of the evidence on this element with respect to L.B.

Miami Cnty. Div. of Family & Children (In re E.S.), 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002). When the evidence shows that the emotional and physical development of a child in need of services is threatened, termination of the parent-child relationship is appropriate. Id.

The evidence supports the trial court's conclusion that the continuation of the parent-child relationship would pose a threat to J.B.'s well-being. Michael Johnson, the Court Appointed Special Advocate ("CASA") testified that he had made approximately a dozen visits to Parents' home over the course of a year and had also visited separately with the children. Johnson testified that Parents' home was "no place for human habitation." Transcript at 77. Johnson also testified that: J.B. may not have "any memory" of Father or Mother given his young age; J.B. has "really bonded well with his new mother" and is improving in thought processes and speech; and for L.B. to be placed with Father "would just be devastating to him physically, psychologically and it would just continue the cycle." Id. at 77-78. Johnson concluded that "the best thing that we can do for both these kids is to stop that cycle. This is a great opportunity for them to go through this door with these new adoptive parents and begin a whole new life away from [Father]. And I just can't say that strongly enough." Id. at 78.

Father's contentions on this issue amount to a request that we reweigh the evidence, which we will not do. Again, Father does not challenge any of the trial court's findings on appeal. Father has not demonstrated that the trial court's conclusion that continuation of the parent-child relationship poses a threat to J.B.'s well-being is clearly erroneous. Accordingly, we agree with the trial court that the termination of Father's

parental rights over the children was appropriate under Indiana Code Section 35-35-2-4(b)(2)(B)(ii).

## Best Interests

Father also contends that termination is not in the children's best interests. In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. In re A.K., 924 N.E.2d 212, 224 (Ind. Ct. App. 2010). "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests." Castro v. State Office of Family & Children, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), trans. denied. "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a finding that termination is in the child's best interests." In re A.K., 924 N.E.2d at 224.

Father does not support his contention on this issue with cogent argument, and the issue is waived. Waiver notwithstanding, the totality of the evidence supports the trial court's conclusion that termination is in the children's best interests, including the CASA's testimony that termination is in the children's best interests. Again, Father's contention on this issue amounts to a request that we reweigh the evidence, which we will not do.

## Satisfactory Plan

Finally, Father contends that DCS "failed to prove that there is a satisfactory plan for the children's care and treatment." Appellant's Brief at 6. In particular, Father asserts that "there was no evidence that the current foster parents planned to adopt L.B. or J.B." Id. But Father ignores the following testimony given by Family Case Manager Mary Clark:

> Q: And if you could just explain to the judge, I guess [the difference] between a regular foster home and a pre-adoptive foster home?
>
> A: A pre-adoptive foster home is a family that is not only looking to foster the children during the life of the case but also would have plans to adopt them if that need should arise.
>
> Q: So should the termination of parental rights happen the children are in a home that is pre-adoptive?
>
> A: Correct.
>
> Q: So therefore they would not have to be moved to another home?
>
> A: No.
>
> &ast; &ast; &ast;
>
> Q: What is the plan for [the children] . . . should the judge terminate the parental rights of [Father]?
>
> A: The plan is adoption.
>
> Q: And it would be in, by the foster parents where the children are placed now?
>
> A: Yes.

Transcript at 55-56.

9

In order for the trial court to terminate the parent-child relationship, the court must find that there is a satisfactory plan for the care and treatment of the child. In re S.L.H.S., 885 N.E.2d 603, 618 (Ind. Ct. App. 2008). This plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. Id. Here, the evidence is sufficient to support the trial court's conclusion that DCS has a satisfactory plan for the care and treatment of the children, namely, adoption. See id.

Affirmed.

VAIDIK, C.J., and BROWN, J., concur.