## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 12 2020, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan Quirk
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of: Ja.P., J.B., and Ju.P. (Minor Children); <br><br> D.P. (Father), <br><br> *Appellant-Respondent,* <br><br> v. <br><br> Indiana Department of Child Services, <br><br> *Appellee-Petitioner.* | August 12, 2020 <br><br> Court of Appeals Case No. 20A-JT-515 <br><br> Appeal from the Delaware Circuit Court <br><br> The Honorable Kimberly S. Dowling, Judge <br><br> The Honorable Amanda L. Yonally, Magistrate <br><br> Trial Court Cause Nos. 18C02-1907-JT-174 18C02-1907-JT-175 18C02-1907-JT-176 |

**Najam, Judge.**

## Statement of the Case

[1] D.P. ("Father") appeals the trial court's termination of his parental rights over his minor children: Ja.P., born July 16, 2015; J.B., born June 11, 2016; and Ju.P., born December 9, 2017 (collectively, the "Children").[1] Father raises one issue for our review, namely whether the State presented sufficient evidence to support the termination of his rights. We affirm.

## Facts and Procedural History

[2] On April 28, 2018, Father was arrested for having committed acts of domestic violence against C.B. ("Mother") in the presence of the Children. On June 12, the Indiana Department of Child Services ("DCS") removed the Children from Mother's care due to allegations that Mother was using drugs. Father was still incarcerated, so DCS placed the Children in relative placement. The next day, DCS filed petitions alleging that the Children were Children in Need of Services ("CHINS"). The trial court then held an initial hearing at which Father appeared via telephone from jail. At that hearing, Mother and Father admitted the allegations in the CHINS petitions, and the court adjudicated the Children to be CHINS.

[3] Thereafter, the court entered its dispositional decree and ordered Father to obtain and maintain appropriate housing and a stable income, complete a

---

[1] The trial court had previously terminated the parental rights of the Children's mother in a separate order, which is not at issue in this appeal.

substance abuse assessment and follow any recommendations, submit to random drug screens, actively participate in a domestic violence assessment and complete any recommendations, and participate in visitation with the Children.

[4] On July 29, 2019, DCS filed petitions to terminate Father's parental rights over the Children. Following a fact-finding hearing, the court entered the following findings and conclusions:

> 5. DCS initially became involved with the family in April 2018 due to allegations of domestic violence between Mother and Father.
>
> 6. According to the Probable Cause Affidavit from an incident occurring on April 28, 2018, Father forced his way inside Mother's hotel room after being released from jail in Illinois. Father prohibited Mother from leaving, hit Mother and threatened to shoot Mother and the youngest child, [Ju.P.]. The domestic violence occurred in the presence of the [Children].
>
> 7. Father was arrested on April 28, 2018 and charged with Domestic Battery with a Prior Conviction, a Level 6 felony; Criminal Confinement, a Level 6 felony; Intimidation, a Level 6 felony; and Residential Entry, a Level 6 felony.
>
> 8. The [C]hild[ren] w[ere] removed from the care of Mother on an emergency basis on or about June 12, 2018 due to allegations of abuse and/or neglect.
>
> 9. Father remained incarcerated from the April 28th incident when the [C]hildren were removed from Mother's care.

10. DCS alleged that domestic violence occurred between Mother and Father, that Mother was using illicit substances, and that the Mother and [C]hild[ren] did not have safe or stable housing.

11. The Department of Child Services filed a Verified Petition Alleging [Children] to be [Children] in Need of Services . . . on or about June 13, 2018.

12. The [C]hild[ren] w[ere] adjudicated to be [Children] in Need of Services on June 13, 2018.

13. A Dispositional Decree was entered on October 18, 2018.

14. The Permanency Plan herein is Adoption.

15. Pursuant to the Dispositional Decree, Father was ordered, in part, as follows: maintain communication with DCS; obey the law; notify DCS of any arrests or changes in address, household composition, employment or telephone number; maintain suitable, safe and stable housing; secure and maintain a legal and stable source of income; refrain from using illegal controlled substances; complete a substance abuse assessment and follow all treatment recommendations; submit to random drug screens; refrain from committing acts of domestic violence; and participate in visitation with the child.

16. Father remained incarcerated in the Delaware County Jail from April 28, 2018 to July 16, 2018.

17. Father did not complete any services while in the Delaware County Jail.

18.  Megan Combs is the Family Case Manager ("FCM") assigned to this case.  FCM Combs has served as the FCM since March 2018, with the exception of a maternity leave for approximately three (3) months, and FCM Combs continues to be the assigned case manager for the family.

19.  FCM Combs met with Father at the Delaware County Jail and advised him what services he needed to complete upon his release from incarceration.

20.  On or about July 16, 2018, Father pled guilty to Domestic Battery, a Level 6 felony, and was sentenced to six (6) months in the Delaware County Jail (executed).  Father was released from the Delaware County Jail on or about July 16, 2018.

21.  Upon Father's release from Delaware County Jail, he was transported to the Tippecanoe County Jail on a warrant relating to a conviction for Invasion of Privacy against the mother of one of his other children.

22.  Father remained in the Tippecanoe County Jail for seven (7) days and was then transported to Winnebago County, Illinois for a probation violation relating to a conviction of Aggravated Domestic Battery against another woman Father had been dating.

23.  Father was convicted of Aggravated Domestic Battery/Strangulation in Winnebago County, Illinois under Cause No. 17CF2692.  Father received a sentence of three (3) years and was released to probation.

24.  The Winnebago County Court revoked Father's probation and executed the three (3) year sentence in the Illinois Department of Correction.

25. Father remains incarcerated in the Illinois Department of Correction at the time of the Fact Finding Hearing in this matter.

26. Father has remained incarcerated in Indiana and Illinois for convictions or allegations of domestic battery or invasion of privacy during the pendency of this CHINS case.

27. Father has not participated in or completed any domestic violence programs or treatment during his incarceration.

28. Father has not financially supported the [C]hild[ren].

29. Father has not visited the [C]hild[ren] due to his incarceration, with the exception of one (1) telephone call.

30. The two older siblings, [Ja.P.] and [J.B.], suffer from frequent nightmares.

31. The [Children] are placed in the home of [D.D. and J.D.]. [D.D.] is the maternal aunt to the [C]hildren.

32. The [Children] have been placed with [D.D. and J.D.] for approximately eighteen (18) months and are thriving in the home.

33. [D.D. and J.D.] are aware of the permanency plan of adoption for the [Children] and are willing to adopt the [C]hildren if they become available for adoption.

34. Sally Brocksen is the Court Appointed Special Advocate assigned to the [C]hild[ren's] case.

35. CASA Brocksen has visited the home of placement, has visited with the [Children], and has reviewed all court reports regarding the [C]hild[ren].

36. CASA Brocksen has determined that it is in the best interest of the [C]hild[ren] that the parental rights of [Father] be terminated and that the [C]hild[ren] be placed for adoption. CASA opined that the [C]hildren are thriving in their current placement and need permanency.

37. The [C]hild[ren] need[] a safe, stable, secure, and permanent environment in order to thrive. Father is unable to provide the [C]hild[ren] with such an environment and has not demonstrated that if he were released from incarceration, he would be able to provide the [C]hild[ren] with a home free of abuse or neglect. The [Children] are closely bonded with their relative placement, and the court finds that disrupting their placement at this time would be traumatic and detrimental to the [Children].

\* \* \*

39. There is a reasonable probability that the conditions that resulted in the [C]hild[ren]'s removal and/or continued placement outside the home will not be remedied. Father was incarcerated when the [C]hildren were detained by DCS, and he has remained incarcerated under multiple cases in two states throughout the duration of the CHINS case. Father's plan for housing upon his release from incarceration is uncertain with the possibility that he would live with his mother or other family in Illinois. Father plans to apply for disability benefits to support himself upon his release. DCS has presented clear and convincing evidence upon which the court can reasonably conclude that Father has not remedied the condition that resulted in the [C]hild[ren]'s removal from the home.

40. There is a reasonable probability that the continuation of the parent/child relationship herein poses a threat to the well-being of the [C]hild[ren]. Father has been incarcerated throughout the duration of the CHINS case on multiple cases involving domestic violence toward women, invasion of privacy, criminal confinement and residential entry. Father reports his projected parole date is in July of 2020; however [F]ather's discharge date is identified as August 2, 2024. Father's release date is uncertain. Father has not demonstrated that he has addressed his history of and propensity to commit domestic violence. Father minimized his criminal history of violence toward women as making "bad decisions" and "having too many women" and has failed to demonstrate that he takes responsibility for his violent actions and behavior. Father committed acts of domestic violence in front of the [Children], leaving the older two siblings with lasting trauma. Father was unable [to] develop a relationship with the youngest child due to his incarceration. Father does not demonstrate any self-awareness as to how his actions and behavior have impacted the [Children], and he has not demonstrated an ability to parent his children. The therapist for the older children did not recommend visitation or contact with Father due to their trauma. DCS has presented clear and convincing evidence upon which the court can reasonably conclude that the continuation of the parent/child relationship herein poses a threat to the well-being of the [C]hild[ren].

Appellant's App. Vol. II at 190-93. The trial court also concluded that termination of the parent-child relationships was in the best interest of the Children and that DCS had a satisfactory plan for the care and treatment of the Children. Accordingly, the court terminated Father's parental rights. This appeal ensued.

# Discussion and Decision

Father contends that the trial court erred when it terminated his parental rights. We begin our review of this appeal by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Fam. & Child. (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cty. Off. of Fam. & Child. (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> > (ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> > (iii)  The child has, on two (2) separate occasions, been adjudicated a child in need of services.
>
> > * * *
>
> > (C) that termination is in the best interests of the child; and
>
> > (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2020).  DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'"  *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[7]  When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses.  *Peterson v. Marion Cty. Off. of Fam. & Child. (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*.  Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment.  *Id.*  Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous.  *Judy S. v. Noble Cty. Off. of Fam. & Child. (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[8] Here, in terminating Father's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cty. Off. of Fam. & Child.*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* On appeal, Father does not specifically challenge any of the trial court's findings. As such, we must simply determine whether the unchallenged findings support the court's judgment. *See J.M. v. Ind. Dep't of Child Servs. (In re A.M.)*, 121 N.E.3d 556, 562 (Ind. Ct. App. 2019).

[9] On appeal, Father asserts that the trial court erred when it terminated his parental rights. Father does not dispute the court's conclusion that termination of his parental rights is in the Children's best interests or that there is a satisfactory plan for the care and treatment of the Children. Rather, Father contends that the trial court's findings do not support its conclusion that the conditions that resulted in the Children's removal will not be remedied or that the continuation of the parent-child relationships poses a threat to the Children's well-being. However, as Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, we need not address Father's contentions that the conditions that resulted in the Children's removal will not be remedied.[2]

---

[2] Father also asserts that DCS presented insufficient evidence to demonstrate that the Children had been adjudicated CHINS on two separate occasions. However, the trial court did not make any such finding.

[10]     Father specifically asserts that there was "[n]o evidence provided by DCS showing the Children would be harmed if [his] parental rights were not terminated." Appellant's Br. at 27. Rather, he asserts that "the only testimony" regarding his relationship with the Children was his testimony that he and the two older children had a "good" relationship. *Id.* Further, he maintains that he has "started the process of turning his life and situation around[.]" *Id.* at 28. However, as we have noted above, Father does not challenge any of the trial court's findings, so we must determine whether the unchallenged findings support the court's judgment. We hold that it does.

[11]     It is well settled that a trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his or her physical, mental, and social growth is permanently impaired before terminating the parent-child relationship. *Shupperd v. Miami Cty. Div. of Family & Children (In re E.S.)*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002). When the evidence shows that the emotional and physical development of a child in need of services is threatened, termination of the parent-child relationship is appropriate. *Id.*

[12]     Here, the trial court found, and Father does not dispute, that Father committed acts of domestic violence against Mother while in the presence of the Children, which offenses resulted in Father's incarceration for several months. The trial court also found that, upon Father's release from jail, he was transported to another jail for a warrant related to a conviction for invasion of privacy against the mother of another one of his children. Further, the court found that, following his release from that incarceration, Father was transported to a jail in

Illinois for a probation violation relating to a conviction for aggravated domestic battery against a former girlfriend. Accordingly, the court found that Father has a "propensity" to commit domestic violence, which led to his incarceration in two states during the underlying proceedings as a result of "multiple cases" involving violence against women. Appellant's App. Vol. II at 193. And the court found that Father has not participated in or completed any domestic violence programs or treatment during his incarceration. Rather, the court found that Father has "minimized" his history of violence toward women as "bad decision" or "having too many women." *Id.*

[13] In addition, the court found that Ja.P. and J.B. suffer from frequent nightmares and that Father's act of domestic violence against Mother while in the presence of the Children has left the two older Children with "lasting trauma." *Id.* And the court found that disputing the Children's current placement would be traumatic and detrimental to them.

[14] We hold that those undisputed findings support the trial court's conclusion that the continuation of the parent-child relationships poses a threat to the well-being of the Children. We therefore affirm the trial court's termination of Father's parental rights as to the Children.

[15] Affirmed.

Bradford, C.J., and Mathias, J., concur.