## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 31 2015, 9:57 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Michael R. Auger
Franklin, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of: O.Q., a Minor Child, <br><br> L.Q., <br> *Appellant-Respondent,* <br><br> v. <br><br> Indiana Department of Child Services, <br> *Appellee-Petitioner.* | July 31, 2015 <br><br> Court of Appeals Case No. 41A05-1412-JT-587 <br><br> Appeal from the Johnson Circuit Court <br><br> The Honorable K. Mark Loyd, Judge, and The Honorable Marla Clark, Magistrate <br><br> Cause No. 41C01-1404-JT-13 |

**Najam, Judge.**

# Statement of the Case

L.Q. ("Mother") appeals the trial court's termination of her parental rights over her minor child O.Q. ("Child"). Mother raises a single issue for our review, namely, whether the trial court's conclusion that there is a reasonable probability that the conditions which resulted in the removal of Child would not be remedied was clearly erroneous. We affirm.

# Facts and Procedural History

Mother gave birth to Child on December 14, 2012.[1] In June 2013, Mother and Child were living in Franklin with N.A., with whom Mother had a romantic relationship. On June 23, Mother and N.A. "were arrested after law enforcement was called to the house for a domestic violence incident which occurred while [Mother] was holding the child." Appellant's App. at 2.

> While at the home, law enforcement was shown a stash of heroin, syringes, burnt spoons, a vial of a liquid substance, a powder substance, and drug papers.
>
> Both [Mother] and [N.A.] have ongoing substance abuse problems and both have been responsible for the child's care while under the influence of illegal substances. Both are aware of the other's substance abuse problems.
>
> [Mother and N.A.] were arrested on or about June 23, 2013[,] and charged with preliminary charges of domestic battery, drug-related offenses and neglect of a dependent.

---

[1] Child's father, T.D., does not participate in this appeal.

*Id.* Also on June 23, the Indiana Department of Child Services ("DCS") removed Child from Mother's care. And on June 25, DCS filed a petition alleging that Child was a child in need of services ("CHINS") because of Mother's history of substance abuse and domestic violence.

[3] At a hearing on the petition, Mother admitted that Child was a CHINS, and the trial court entered an order declaring Child a CHINS. And on July 30, the trial court ordered Mother to: maintain appropriate housing; not use controlled substances without a valid prescription; submit to random drug screens; complete a substance abuse evaluation; participate in home-based case management; not commit acts of domestic violence; and participate in domestic violence counseling. The trial court also ordered N.A. to participate in services.

[4] On April 30, 2014, DCS filed a petition for the involuntary termination of Mother's parental rights to Child. Following an evidentiary hearing on the petition on September 24, 2014, the trial court entered the following relevant findings and conclusions in support of terminating Mother's parental rights:

> 10. From July 201[3] to April 2014, Mother and [N.A.] remained together as a couple. DCS offered reunification services to each of them.
>
> 11. In April 2014, Mother requested [N.A.] be removed from the case as Mother no longer desired to be in a relationship with her.
>
> 12. By Order dated June 18, 2014, this Court issued an Order Modifying Dispositional Decree. This Order modified the court's dispositional order of July 30, 2013, by removing [N.A.]

from the case and ordering Mother to have no further contact with [N.A.]

13. This Court approved a change in permanency plan from reunification to a concurrent plan of adoption and reunification by order dated February 25, 2014.

14. Mother was ordered to complete a number of dispositional goals under the CHINS cause. In summary, the goals are:

a. maintain appropriate, safe, stable housing;

b. provide proof of financial resources to maintain the household;

c. allow a representative of CASA/DCS entry into the home;

d. maintain contact with DCS; pay child support as ordered by the Court;

e. not use, consume, or distribute any controlled substances;

f. demonstrate the ability to meet the child's needs;

g. execute all consents for release of information for DCS/CASA to monitor progress in the matter;

h. participate in home-based case management, completing the reasonable recommendations of the service provider;

i. participate in parenting time as scheduled through DCS;

j. not commit any acts of domestic violence;

> k. submit to random drug screens within a reasonable time of the request;
>
> l. submit to a substance abuse evaluation and follow through with the reasonable recommendations of the provider; and
>
> m. participate in domestic violence counseling and follow through with the reasonable recommendations of the provider.

15. In addition to the goals stated above, Mother was ordered to have no contact with [N.A.]

16. Mother has failed to establish and maintain safe and stable housing for herself or the child. Mother lived with [N.A.] from June 2013 to approximately April 2014, when she ended her relationship with [N.A.]

17. After leaving [N.A.] in April 2014, Mother lived with her grandmother for a couple of weeks before being asked to leave. From there, Mother lived with [a boyfriend named J.F.] in various hotels, and then in an apartment, until approximately one week before the hearing.

18. At the time of the hearing, Mother reported living with her grandmother again. She admits she had only spent a few nights at her grandmother's prior to the hearing and that she also stays with friends. Further, this is the same grandmother who requested that Mother leave the house after staying there a couple of weeks in April 2014.

19. Mother has failed to provide proof of financial resources sufficient to maintain a household for herself and the child. Mother reported employment throughout the CHINS case, however, she did not provide proof of income to her home-based

provider when requested. While Mother has provided occasional pay-stubs to DCS, she has not provided proof of sufficient income to maintain a household to DCS or to this Court.

20. Mother has used controlled substances throughout the CHINS case. She was ordered to participate in and complete substance abuse treatment. Mother was discharged from three different programs and failed to complete substance abuse treatment.

21. Mother was initially referred to Take Back Control for substance abuse treatment and underwent an assessment there. She then requested another service provider and was referred to Adult and Child. After being referred to Adult and Child, Mother requested another referral to Take Back Control.

22. Mother was unsuccessfully discharged from Take Back Control in January 2014, for continuing to have positive drug screens.

23. Mother was then referred to Adult and Child. She was unsuccessfully discharged in July 2014, because she failed to take responsibility for having used drugs after provided positive drug screens.

24. Mother's substance abuse throughout the CHINS case has been significant based on the observations of service providers and the results of drug screens. She has had positive screens as recently as July 2014.

25. Mother remains at high risk for additional substance abuse in that she has not completed a substance abuse treatment [program] and is apparently now in a relationship with an individual, [J.F.], who Mother admits uses drugs.

26. Mother did not consistently participate in home-based services and has not completed the recommendations of the service provider.

27. Mother was referred to home-based services to work with Mother on housing, employment, and parenting skills. Mother met with the home-based provider fairly regularly; however, Mother did not progress in obtaining safe and stable housing for the child. The home-based provider also attempted to help keep Mother safe from repeated domestic violence with [J.F.] Mother failed to follow through with the provider's suggestions to contact domestic violence shelters.

28. Mother did obtain and maintain employment; however, she did not provide DCS, the home-based worker, or the Court with proof of her financial resources.

29. Supervised parenting time was provided to Mother three days a week, for two hours each visit. Due to several missed appointments, Mother was required to contact the provider the day before the visit to confirm she would be participating in the visit. If Mother did not call the day before the visit, the visit would not occur. This plan was put in place because the service provider was transporting the child to the visit.

30. Mother failed to attend a visit as recently as one week prior to the hearing on DCS's Verified Petition to Terminate her Parental Rights. Mother missed approximately twenty-five percent (25%) of her parenting time opportunities during the CHINS case.

31. Due to Mother's lack of safe and stable housing throughout the CHINS matter, the parenting time occurred at Adult and Child. The parenting time was increased by one hour in July 2014; however, Adult and Child could not recommend additional parenting time due to Mother's lack of consistent participation.

32. Mother's significant relationships during this case have both been marked by domestic violence. Mother was order[ed] to participate in domestic violence education and complete the reasonable recommendations of the provider.

33. After being unsuccessfully discharged from two domestic violence programs, Mother completed domestic violence education through Adult and Child with Robin Brown. Ms. Brown counseled Mother on the cycles of domestic violence, how domestic violence impacts children, and how to break the cycle. Ms. Brown also offered Mother assistance should she find herself in a domestic violence situation.

34. By Mother's admission, her relationship with [N.A.] was marked with domestic violence. After being ordered to have no further contact with [N.A.], Mother petitioned for a protective order. However, the Order was dismissed when Mother did not appear at the hearing set on the petition.

35. After leaving [N.A.], Mother began living with [J.F.] In July 2014, after Mother had completed domestic violence education with Ms. Brown, Mother accused [J.F.] of raping and beating her. Shortly after this incident, Mother was found sharing a hotel room with [N.A.], in violation of the no contact Order entered in the CHINS case.

36. Mother eventually moved back in with [J.F.] In September 2014, approximately a week before the hearing, Mother again accused [J.F.] of hurting her.

37. Mother did not contact Ms. Brown for assistance or counseling after the domestic violence incidents with [J.F.] Mother also failed to seek out assistance from domestic violence shelters as recommended by her home-based case worker.

38. The child's health and safety was at risk during the domestic violence incident leading up to the child's detention. Despite having completed domestic violence education, Mother has not demonstrated she is able to avoid domestic violence in her significant relationships.

39. The child was placed in the home of Mother's grandmother when the child was detained. However, the child was moved to a licensed foster care home upon Mother's request. It was discovered the grandmother was smoking around the child when the child's doctors had requested she not be around cigarette smoke. This is the same home in which Mother now claims to be residing.

40. When Mother began to live with [J.F.] in April 2014, Mother reported to FCM Montgomery that he would participate in services and take drug screens. [J.F.] refused to submit to a drug screen when requested by family case manager Corina Harmless in September 2014. [J.F.] did not participate in any services.

41. The child has remained outside the home of the parents since her detention in June 2013.

42. It would be in the child's best interest for the parent-child relationship to be terminated as Mother had not made significant progress toward remedying the issues that led to her removal.

43. DCS's plan for the child's continued care is adoption by her current foster parents.

## II. CONCLUSIONS

* * *

2. The child has been removed from the parent for at least six (6) months under a dispositional decree.

3. The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months.

4. There is a reasonable probability the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

* * *

6. Mother has made little, if any, progress in completing her dispositional goals in over a year, despite several services having been provided to her. Mother has demonstrated a pattern of being involved in violent relationships. Mother's failure to complete substance abuse treatment, in addition to her continued association with drug users, demonstrates Mother has not benefitted from the substance abuse treatment she did participate in.

7. There is a reasonable probability the continuation of the parent-child relationship poses a threat to the well-being of the child. Mother has made little, if any, progress in addressing the reasons for the Court's involvement with the family. Continuing the parent-child relationship under the circumstances poses the threat of harm to the child.

8. Mother admitted that her substance abuse and history of being involved in domestic violence prevented her from effectively parenting [Child]. These circumstances have not changed in spite of Mother having assistance and opportunity to change them.

9. Termination of Mother's parental rights is [in] the best interests of the child. The child has been in foster care since she was six months old, and an adoptive family has already been identified. She needs permanency and stability. She should not

be forced to wait indefinitely for Mother to work toward reunification. Mother has demonstrated an inability to provide [Child] with a home that is free of violence and use of illegal substances, both of which are detrimental to her.

10. There is a satisfactory plan for the care and treatment of the child, which is adoption.

Appellant's App. at 17-22 (citations omitted). This appeal ensued.

## Discussion and Decision

[5] We begin our review of this appeal by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cnty. Ofc. of Family & Children (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[6] Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove, among other things:

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

\* \* \*

(C) [and] that termination is in the best interests of the child . . . .

Ind. Code § 31-35-2-4(b)(2).[2] That statute provides that DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights. DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cnty. Ofc. of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that

---

[2] Indiana Code Section 31-35-2-4(b)(2)(B) also allows DCS to allege that "[t]he child has, on two (2) separate occasions, been adjudicated a child in need of services." But that additional, alternative provision is not relevant here.

are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cnty. Ofc. of Family & Children (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999). *trans. denied*.

[8]     Here, in terminating Mother's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Ofc. of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[9]     Mother does not challenge the trial court's findings of fact in its order terminating her parental rights. Rather, Mother challenges only the court's legal conclusion that, on these facts, termination of her parental rights is justified because Mother will not remedy the conditions that resulted in Child's removal. But, again, Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, and the trial court concluded *both* that Mother will not remedy the conditions that resulted in Child's removal *and* that the continuation of the parent-child relationship poses a threat to the well-being of Child. Because

Mother does not challenge the trial court's conclusion under 31-35-2-4(b)(2)(B)(ii), that issue is waived.

[10] Waiver notwithstanding, DCS presented sufficient evidence to support the termination of Mother's parental rights, and the trial court's conclusions are not clearly erroneous. A trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his physical, mental, and social growth is permanently impaired before terminating the parent-child relationship. *Shupperd v. Miami Cnty. Div. of Family & Children (In re E.S.)*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002). When the evidence shows that the emotional and physical development of a child in need of services is threatened, termination of the parent-child relationship is appropriate. *Id.*

[11] The undisputed evidence shows that Child was removed from Mother's care only a few months after Child's birth. During the CHINS proceedings, Mother did not maintain consistent contact with her family case manager; she has not maintained suitable or stable housing; she has continued to be involved in abusive personal relationships; she has not consistently visited with Child; she did not follow through on substance abuse treatment recommendations; and she failed several drug screens, including as recently as July 2014. Mother's contentions on appeal amount to a request that we reweigh the evidence, which we will not do. Again, Mother does not challenge any of the trial court's findings on appeal. And those findings support the trial court's conclusions that there is a reasonable probability that the conditions that resulted in Child's removal will not be remedied and that the continuation of the parent-child

relationship poses a threat to Child's well-being.  The findings also support the trial court's conclusions that termination is in the best interests of Child and that there is a satisfactory plan for the care and treatment of Child.  We hold that the trial court did not err when it terminated Mother's parental rights to Child.

[12]    Affirmed.

Kirsch, J., and Barnes, J., concur.