# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 26 2016, 7:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Russell Dean Bailey
Demotte, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of: E.M., Minor Child,

T.R.,

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

August 26, 2016

Court of Appeals Case No. 37A03-1604-JT-912

Appeal from the Jasper Circuit Court

The Honorable John D. Potter, Judge

Trial Court Cause No. 37C01-1512-JT-339

**Najam, Judge.**

## Statement of the Case

T.R. ("Mother") appeals the trial court's termination of her parental rights over her minor child E.M. ("Child"). Mother raises a single issue for our review, namely, whether the State presented sufficient evidence to support the termination of her parental rights. We affirm.

## Facts and Procedural History

Mother gave birth to Child on September 8, 2013.[1] In November and December 2014, the Indiana Department of Child Services ("DCS") received two reports that Mother was abusing illegal drugs. One of those reports was made after a family member found Mother unconscious outside of her apartment while Child was alone inside Mother's apartment. On December 31, Jody Knoth, a DCS caseworker, made an unannounced visit to Mother's home and conducted a drug screen on Mother, which indicated that Mother had taken methamphetamine. Thereafter, on January 8, 2015, DCS removed Child from Mother's care and placed Child with Child's father.

On January 9, 2015, DCS filed a petition alleging that Child was a Child in Need of Services ("CHINS"). In particular, DCS alleged that Mother: was abusing methamphetamine and marijuana, as indicated by a drug screen; was

---

[1] In February 2016, Child's father, K.M., voluntarily terminated his parental rights and does not participate in this appeal.

reportedly abusing heroin; had left Child home alone when Mother was found passed out outside of her apartment; and had not provided stable housing for Child. During the initial hearing on that petition, Mother denied the allegations. The trial court adjudicated Child to be a CHINS and, following a factfinding hearing, the court ordered Mother to participate in a drug treatment program, submit to random drug screens, participate in individual therapy, complete a substance abuse evaluation, and participate in parenting education. Mother's compliance with that dispositional order was inconsistent. While Mother initially complied with parent education services and visited with Child, "things dropped off pretty substantially" in terms of Mother's participation in services as of April or May of 2015. Tr. at 13. Mother did not comply with the recommendations of the substance abuse evaluation, and she left an inpatient substance abuse treatment facility one day after she had checked in. Mother continued to fail drug screens and had "[c]riminal involvement, including for drugs." *Id.*

[4] On December 23, 2015, DCS filed a petition to terminate Mother's parental rights to Child. Following a hearing, the trial court granted that petition. In support of its order, the trial court entered the following findings and conclusions:

> 8. That after the Dispositional Order was entered Mother inconsistently participated with services. Since that time mother failed to complete any drug treatment program; continued to test positive for illegal substances or substances she does not have a prescription for including opiates, marijuana, methamphetamine, tramadol, and heroin; has had criminal charges through the

CHINS case and presently a warrant for her arrest; has given different addresses and phone numbers in order to avoid service providers and DCS; and failed to participate in visitations.

9. DCS' plan for Child is that she be adopted; this plan is satisfactory for Child's care and treatment.

10. It was established by clear and convincing evidence that the allegations of the petition are true in that:

> a. The child has been removed from her parents for at least six (6) months under a dispositional decree. . . .
>
> b. There is a reasonable probability that: the conditions that resulted in the child's removal or the reasons for the placement outside the parent's home will not be remedied and/or the continuation of the parent[-]child relationship poses a threat to the well[-]being of the child, in that:
>
>> i. That Mother currently has a warrant out for her arrest for a revocation of probation.
>>
>> ii. That Mother inconsistently participated in services and was not compliant.
>>
>> iii. That Mother is still continuing to test positive for substances that she does not have a prescription for and for illegal substances.
>>
>> iv. That Mother has had criminal charges during the underlying CHINS case.

v. That Mother only made 19 [of] 46 offered visitations.

vi. That Mother failed to complete any drug treatment program.

vii. That Mother has had inconsistent housing and still continues to have unstable housing.

viii. That Mother was only employed once between September and November during the CHINS case and is no longer employed.

ix. That Mother actively tried to avoid service providers and DCS by giving different addresses and phone numbers.

c. Termination is in the best interest of the child in that:

i. The child needs a safe, stable substance abuse[-]free home that mother cannot provide.

ii. That the mother cannot provide the child with permanency that can be provided by the prospective adoptive home.

d. The DCS has a satisfactory plan for the care and treatment of the child, which is adoption.

Appellant's App. at 8-9. This appeal ensued.

## Discussion and Decision

We begin our review of this appeal by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cnty. Ofc. of Family & Children (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove, among other things:

> (B) that one (1) of the following is true:
>
> > (i)  There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

* * *

(C) [and] that termination is in the best interests of the child . . . .

Ind. Code § 31-35-2-4(b)(2). That statute provides that DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights. DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[7] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cnty. Ofc. of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cnty. Ofc. of Family & Children (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[8] Here, in terminating Mother's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Ofc. of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and,

second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[9] Mother contends that the evidence is insufficient to support the trial court's findings underlying its conclusions that Mother will not remedy the conditions that resulted in Child's removal; that the continuation of the parent-child relationship poses a threat to the well-being of Child; that termination is in the best interests of Child; and that there is a satisfactory plan for Child. Because Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, we only address the sufficiency of the evidence to support the trial court's conclusions that continuation of the parent-child relationship poses a threat to Child's well-being; that termination is in Child's best interests; and that there is a satisfactory plan for Child. And we address each of those contentions in turn.

### Continuation of the Parent-Child Relationship

[10] In the opening paragraphs of the Argument section of her brief, Mother purports to challenge the DCS' evidence in support of this element of the statute. However, Mother does not make cogent argument or provide citations to the record on appeal or case law in support of this contention. Ind. Appellate Rule 46(A)(8)(a). Accordingly, the issue is waived.

[11] Waiver notwithstanding, DCS presented ample evidence to support the trial court's conclusion that the continuation of the parent-child relationship poses a threat to Child's well-being. A trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his physical, mental, and social growth is permanently impaired before terminating the parent-child relationship. *Shupperd v. Miami Cnty. Div. of Family & Children (In re E.S.)*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002). When the evidence shows that the emotional and physical development of a child in need of services is threatened, termination of the parent-child relationship is appropriate. *Id.*

[12] Mother does not challenge any of the trial court's findings. The undisputed evidence shows that Child was removed from Mother's care approximately one year before DCS filed its petition to terminate her parental rights. During the CHINS proceedings, Mother did not follow recommendations for treatment of her substance abuse and checked herself out of an inpatient substance abuse treatment facility after one day; Mother continued to fail drug screens throughout the CHINS proceedings; Mother avoided contact with DCS; and Mother attended only nineteen of forty-six scheduled visitations with Child. In short, Mother failed to comply with the court's dispositional order in a myriad of ways. The trial court's findings support the trial court's conclusion that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to Child's well-being.

### Best Interests

[13] In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010). "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests." *Castro v. State Office of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*. "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d at 224.

[14] Mother has also waived this issue for failure to present cogent argument.[2] Waiver notwithstanding, both the family case manager and the court appointed special advocate testified that termination of Mother's parental rights was in Child's best interests. The totality of the evidence, including Mother's historical inability to provide a safe and stable home and her refusal to take advantage of the resources DCS provided her during the CHINS proceedings, supports the

---

[2] After arguing that the trial court "erred in ruling that there was a likely probability that the conditions leading to the removal [of Child] would not be remedied," Mother's argument on the remaining two statutory elements consists of the following: "Mother also disputes that the termination was in the best interests of the Child or that DCS had a satisfactory plan for the Child in adoption as Child will now grow up without having her Mother in her life[.]" Appellant's Br. at 18.

trial court's conclusion that termination of Mother's parental rights is in Child's best interests.

### *Satisfactory Plan*

[15] In order for the trial court to terminate the parent-child relationship, the trial court must find that there is a satisfactory plan for the care and treatment of the child. *A.P. v. Marion Cnty. Ofc. of Family & Children (In re D.D.)*, 804 N.E.2d 258, 268 (Ind. Ct. App. 2004), *trans. denied*. This plan does not need to be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. *Id.*

[16] By again failing to present cogent argument, Mother has waived her contention that the evidence does not support the trial court's conclusion that DCS has a satisfactory plan for the care of Child. Waiver notwithstanding, the undisputed evidence shows that DCS plans to place Child for adoption in one of four prospective homes. The trial court's conclusion on this issue is supported by clear and convincing evidence. The trial court did not err when it terminated Mother's parental rights to Child.

[17] Affirmed.

Vaidik, C.J., and Baker, J., concur.