# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 03 2018, 10:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Steven J. Halbert
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Patricia C. McMath
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of T.M. (Minor Child)

and

T.S. (Mother) and W.M. (Father),

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

December 3, 2018

Court of Appeals Case No.
18A-JT-694

Appeal from the Marion Superior Court

The Honorable Gary Chavers, Judge Pro Tempore

The Honorable Scott B. Stowers, Magistrate

Trial Court Cause No.
49D09-1612-JT-1244

**Bailey, Judge.**

# Case Summary

T.S. ("Mother") and W.M. ("Father") appeal the trial court judgment terminating their parental rights to their child, T.M. ("Child").

We affirm.

# Issues

The parties raise the following issues on appeal:

> I.  Whether the termination of their parental rights must be reversed because the trial court failed to complete the termination hearing within 180 days of the date the termination petition was filed.

> II.  Whether the trial court clearly erred when it terminated Father's[1] parental rights to Child.

# Facts and Procedural History

Child was born on August 2, 2015. On September 3, 2015, the Indiana Department of Child Services ("DCS") filed a petition alleging Child was a Child in Need of Services ("CHINS") because Mother and Father had

---

[1] Mother appeals only the failure to complete a hearing within 180 days of the termination of parental rights petition; she does not otherwise challenge the termination of her parental rights.

substance abuse issues, mental health issues, and unstable housing. Father admitted to the CHINS allegation that he "has mental health concerns that are in need of treatment," and Mother waived her right to a fact-finding hearing. Appellant's App. at 23. The trial court adjudicated Child to be a CHINS on September 17.

[5] On October 15, the trial court held a dispositional hearing at which Child was removed from her parents' care, and Mother and Father were ordered to engage in home-based therapy, parenting assessments, psychological evaluations, and random drug screenings. DCS also referred Father to home-based case management services. Parents were authorized to have supervised parenting time. On January 14, 2016, the dispositional decree was modified and both parents were ordered to participate in domestic violence services. Home-based services were subsequently closed due to the lack of the parents' participation. Services to Mother were re-referred five to six times due to lack of communication and lack of stable housing. Father was also inconsistent in his participation in services. Father had housing, but not housing appropriate for Child.

[6] On December 23, 2015, Father's parenting time was suspended, and, on January 14, 2016, it was reinstated under the condition that Father resume taking his medication. On March 3, 2016, Father's parenting time was suspended again until such time as his then-existing arrest warrant was cleared. In approximately December of 2016, Father was incarcerated in Illinois, and, pursuant to Indiana Evidence Rule 201, we take judicial notice that his

projected parole date is March 27, 2020.

https://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last visited November 14, 2018).

[7] On December 16, 2016, DCS filed a petition to terminate both parents' rights to Child ("TPR petition") and the court held an initial hearing. The court held a pretrial hearing on the TPR petition on February 24, 2017, at which both parents appeared by counsel. At that hearing, "[t]he parties agree[d] to set this matter for trial," and the court set the trial for June 20, 2017, with no objection from either parent. Appellant's App. at 19. On May 5, new counsel entered an appearance for Father and did not object to the hearing set for June 20.

[8] On June 19, 2017, Mother and Father filed a joint motion to convert the fact-finding hearing scheduled for June 20, 2017, to a pretrial conference because Father had not been served with a Ten Day Notice of Hearing, and, because Father had been recently moved to a new correctional facility, his counsel could not confirm Father's availability for trial. On June 20, the trial court granted the motion and, with both parties' counsel present in court, set the trial for September 20, 2017. Neither counsel for Mother or Father moved to dismiss the TPR petition.

[9] On September 20, 2017, Mother and Father appeared by counsel for trial. Mother moved to continue the trial because she had recently been placed in a rehabilitation program in Evansville. Father joined in the motion because he wanted DCS to consider placement of Child with paternal Grandmother. The

trial court granted the motion to continue and set the trial for November 1, 2017, without objection or motion to terminate the TPR petition. On October 30, 2017, Mother filed a Motion to Dismiss pursuant to Indiana Code Section 31-35-2-6, arguing the TPR petition should be dismissed because the fact-finding hearing was not completed within 180 days of the petition being filed. The trial court denied the motion on October 31.

[10] The trial on the TPR petition was held on November 1, 2017, and January 2, 2018. On March 6, 2018, the trial court granted the TPR petition and found in relevant part as follows:

* * *

21. Michael Johnson of Inspired Transformation was [Father's] Home-Based Case Worker and also facilitated supervised parenting time in June 2016 until [Father's] incarceration in late 2016.

22. During the time that Mr. Johnson was working with [Father], Father had housing, but not housing appropriate for the child.

23. [Father] began a Domestic Violence Assessment. However, he stopped attending after a couple of sessions and he failed to complete this service.

24. Mr. Johnson observed an altercation between [Father] and [Mother] which began as an argument and soon escalated to a scuffle or fight inside of a motor home.

25.    [Father] missed approximately nine visits with the child during Mr. Johnson's time on the case.  At no point did [Father] ever progress to unsupervised parenting time.

* * *

32.    Regina Barnett-Johnson, then of Capital City, provided Home Based Therapy and supervised parenting time for [Mother], and later became Mother's Home Based Case Manager, since January or February 2016.

* * *

34.    During one parenting time session with Ms. Barnett-Johnson, [Mother] and [Father] got into a fight in the presence of the child.

* * *

40.    The child is placed in a preadoptive foster home where she is bonded and doing well.  She has her own room and refers to the foster mother as "mom."  She has been in this placement for approximately two years.

41.    In September 2017, [Mother's home-based therapist] drove [Mother] to Evansville[,] Indiana to a "detox" facility.  It was a 30 day program.  However, after 4 days, [Mother] notified FCM Wilson that she would be unable to stay in Evansville and she left that facility.

42.    The child had been removed from her parents' care and custody under a dispositional decree for at least six (6) months prior to this termination petition being filed on December [16], 2016.

43.     There is a reasonable probability that the conditions that resulted in the child's removal and continued placement outside of the home will not be remedied by her parents. [Mother] and [Father] have had well over two years to put forth an effort and have not done so. After extensive referrals, [Mother] is still unable to parent the child effectively. Her parenting skills are not sufficient to care for the child. She has been unable to address her substance abuse issues despite being offered many services[,] including a 30 day detox stay in Evansville[,] Indiana. [Father] is presently incarcerated and has not participated in services. He has no housing, stability[,] or employment upon his release. Nor did he have stable and appropriate housing prior to his incarceration. Prior to his incarceration, [Father] was inconsistent in participation in services.

44.     Continuation of the parent-child relationship poses a threat to the child's well being in that it would serve as a barrier to obtaining permanency for her through an adoption when her parents are unable to do so. [Mother's] ability to parent and her ability to make safe decisions has not been demonstrated. Neither parent has made meaningful progress in over two years and neither parent is capable of meeting the child's needs.

45.     Termination is in the child's best interests. Termination would allow her to be adopted into a safe and permanent home where her needs will be safely met.

46.     There [exists] a satisfactory plan for the future care and treatment of the child, that being adoption.

47.     The Guardian ad Litem agrees with the permanency plan of adoption as being in [Child's] best interests.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the parent-child relationship between [Child] and [Mother] and [Father] is hereby terminated.

Appellant's App. at 24-26. This appeal ensued.

# Discussion and Decision

## Timing of Fact-Finding Hearing

[11] Mother and Father challenge the trial court's denial of the motion to dismiss the TPR petition for untimeliness of the fact-finding hearing. Indiana Code Section 31-35-2-6 states:

(a) Except when a hearing is required after June 30, 1999, under section 4.5 of this chapter, the person filing the petition shall request the court to set the petition for a hearing. Whenever a hearing is requested under this chapter, the court shall:

(1) commence a hearing on the petition not more than ninety (90) days after a petition is filed under this chapter; and

(2) complete a hearing on the petition not more than one hundred eighty (180) days after a petition is filed under this chapter.

(b) If a hearing is not held within the time set forth in subsection (a), upon filing a motion with the court by a party, the court shall dismiss the petition to terminate the parent-child relationship without prejudice.

[12] Here, the fact-finding hearing was not completed within 180 days—i.e., by June 14, 2017—after the filing of the TPR petition. Rather, it was completed on January 2, 2018, 381 days after the petition was filed, and the parents contend that they are entitled to dismissal on that basis. However, the parents have waived this argument because, at the February 24, 2017, pre-trial hearing, they acquiesced to a hearing date of June 20, 2017, i.e., six days past the 180-day deadline. At that time, neither parent filed a motion to dismiss the TPR petition for failure to set a timely fact-finding hearing; in fact, neither parent expressed any disagreement at all with the date of the fact-finding hearing. Moreover, the parents subsequently filed motions to continue the hearing date even further. Therefore, the parents acquiesced to the fact-finding hearing date and thereby waived their right to challenge that date. *See C.G.G. v. Ind. Dep't of Child Servs. (In re N.C.)*, 83 N.E.3d 1265, 1267 (Ind. Ct. App. 2017) (holding Father waived his right to challenge the setting of the TPR fact-finding hearing date when he had initially agreed to a date beyond the 180-day deadline).

# Termination of Father's Parental Rights

## Standard of Review

[13] Father maintains that the trial court's order terminating his parental rights was clearly erroneous. We begin our review of this issue by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the

interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cty. Office of Family & Children (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[14] Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove, among other things:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services.
>
> * * *
>
> (C) [and] that termination is in the best interests of the child . . . .

Ind. Code § 31-35-2-4(b)(2). DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights. *Id.* DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[15] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cty. Office of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cty. Office of Family & Children (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999). *trans. denied*.

[16] Here, in terminating Father's parental rights, the trial court entered specific findings. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence

and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[17] Father contends that the trial court erred when it concluded that he will not likely remedy the conditions that resulted in Child's removal and that the continuation of the parent-child relationship poses a threat to the well-being of Child.[2] Because Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, we only address whether the trial court erred in concluding that continuation of the parent-child relationship poses a threat to Child.

## Continuation of the Parent-Child Relationship

[18] Father maintains that the trial court's conclusion that continuation of the parent-child relationship would pose a threat to Child is not supported by the evidence. However, Father's argument on this point is simply a request that we reweigh the evidence, which we cannot do. *In re D.D.*, 804 N.E.2d at 265. Instead, we must determine whether the evidence most favorable to the judgment supports the trial court's conclusion. *Id*.; *Quillen*, 671 N.E.2d at 102. We hold that it does.

[19] The trial court's conclusion is supported by the following evidence. At the time Child was removed from the home, both parents had substance abuse issues, mental health issues, and unstable housing. Appellant's App. at 24. At no

---

[2] Father does not challenge the conclusion that termination is in the best interests of Child.

point during the pendency of the CHINS or TPR actions or at the time of the TPR hearing did Father have housing that was appropriate for Child. In fact, at the time of the TPR hearing, Father was incarcerated, with his first chance for parole being over two years later. Also during the pendency of the CHINS action, Mother and Father engaged in domestic violence in the presence of Child, prompting the trial court to order Father to participate in domestic violence services. Although Father began those services, he stopped attending after a couple of sessions and failed to complete them. Father also failed to complete other ordered services, such as home-based services. Father missed approximately nine visits with Child before he was incarcerated, and Father never progressed to unsupervised visitation. Moreover, Father has no housing or employment arranged after he is released from incarceration. And the Guardian ad Litem agreed that Child's adoption was in her best interest. All of this evidence clearly supports the trial court's conclusion that continuation of the Father-Child relationship would pose a threat to Child.

[20] A trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that her physical, mental, and social growth is permanently impaired before terminating the parent-child relationship. *Shupperd v. Miami Cty. Div. of Family & Children (In re E.S.)*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002). When the evidence shows that the emotional and physical development of a child in need of services is threatened, as it does here, termination of the parent-child relationship is appropriate. *Id.*

# Conclusion

Mother and Father have waived their right to challenge the timeliness of the TPR hearing by acquiescing to a hearing date beyond the 180-day deadline contemplated in Indiana Code Section 31-35-2-6. And the trial court's conclusion that continuation of the Father-Child relationship would pose a threat to Child was supported by the evidence.

Affirmed.

Bradford, J., and Brown, J., concur.